WILLIAM P. JEWETT, Assignee, v. IOWA LAND COMPANY and Others.[1]

May 29, 1896.

Nos. 10,041—(129).

**Mechanic's Lien—Enforcement—Cross Bill for Foreclosure of Mortgage—New Issues—Filing Pleadings—Notice to Co-Defendant.**

E. gave a mortgage to C. on 740.33 acres of land. Upon 40 acres of this land three mechanic's liens were filed, and three actions to foreclose the same were commenced and consolidated. The complaints were filed in the office of the clerk of the district court under the mechanic's lien law, but only the 40 acres were referred to in the complaint. The mortgagor and mortgagee were made parties defendant. The mortgagor did not appear, but the mortgagee appeared, and filed its answer in the office of the clerk in the district court, in the nature of a cross bill, wherein it alleged its mortgage, and default in the payment thereof, and demanded relief, that such mortgage be foreclosed upon the 740.33 acres of land, which relief was granted by the court, and the premises were sold at foreclosure sale. Other than by reason of the filing of the cross bill the mortgagor had no notice thereof, and no actual service of the same was made upon the mortgagor, who did not appear in the foreclosure proceedings. *Held,* that the provisions of the mechanic's lien law for filing, instead of serving, pleadings, apply only to issues tendered by the complaint, or expressly authorized by the statute, and not to pleadings in the nature of cross bills, setting up matters outside of and foreign to such issues. *Held,* further, that

[1] Reported in 67 N. W. 639.

one defendant cannot have a decree against a co-defendant upon a cross bill demanding affirmative relief upon new issues and for new objects, and not germane to the matter alleged in the original complaint, without proper notice to such co-defendant.

### Same—Judgment—Collateral Attack.

While judgments of courts of general jurisdiction impart absolute verity, and every presumption will be indulged in favor of the record, yet, if there is an apparent defect in the jurisdictional record, it may be impeached collaterally. *Held*, that it appearing affirmatively from the record in this case that the cross bill was filed in the office of the clerk of the district court, and never served upon this plaintiff as co-defendant in the foreclosure proceedings, who had no notice thereof, and did not appear in such proceedings, the court was without jurisdiction to render judgment upon the new matter embraced in the cross bill, and that, as the record itself establishes the invalidity of the former decree and judgment, it is impeachable collaterally.

### Lis Pendens.

The office of a lis pendens is merely to charge a subsequent purchaser with notice of the pendency of the action.

### Void Judgment—Order Declaring Valid.

A void judgment cannot be validated by citing the party against whom it is entered to show cause why it should not be declared valid. .

Appeal by plaintiff from a judgment of the district court for Washington county, in favor of defendants, entered in pursuance of the findings and order of Williston, J. Reversed.

*Flandrau, Squires & Cutcheon*, for appellant.

*Stevens, O'Brien, Cole & Albrecht* and *Harvey Officer*, for respondents.

BUCK, J. The plaintiff herein is the assignee of the Elmo Park Company, and is in possession of, and claiming title to, 740.33 acres of land situate in Washington county, in this state, and this action is brought to determine the adverse claims of the defendants.

The Iowa Land Company, defendant, claims title through the foreclosure of a certain mortgage executed by the Elmo Park Company to the St. Paul Trust Company, trustee of said land company, defendant, covering the said 740.33 acres. Subsequent to the execution and recording of the mortgage, the defendant Grant, under a contract with the Elmo Park Company, constructed three buildings

on a certain 40 acres included in the mortgage, and thereafter filed three separate mechanic's liens on the three buildings, respectively, but each lien embraced the same 40 acres. Thereafter Grant brought three separate actions in the district court of Washington county, to enforce these liens against the Elmo Park Company and the St. Paul Trust Company, as defendants, claiming that he was entitled to liens prior to said mortgage upon the buildings, respectively, and to a lien upon the 40 acres. The complaints in these actions did not describe or refer to any part of the 740.33 acres except the 40 acres covered by the mechanic's liens. The Elmo Park Company did not appear in either of these lien actions, or take part in the proceedings therein.

The St. Paul Trust Company appeared therein, and filed its answers to the several suits in the office of the clerk of the court of Washington county, and at the same time filed three notices of lis pendens in the office of the register of deeds of said county. These answers were never served upon the Elmo Park Company, unless such filing of them with the clerk constituted service. In these answers, the St. Paul Trust Company claimed a prior lien to the said mechanic's liens, and also that default had been made in the payment of the sum secured by said mortgage; and it demanded judgment for the amount due on said mortgage debt, and for a foreclosure of said mortgage and a sale of the whole 740.33 acres, and for a personal judgment against the Elmo Park Company for any deficiency. It does not appear that the Elmo Park Company ever had any notice of the contents of these answers. Subsequently, these three actions were consolidated and tried as one action, and a judgment entered [2] thereon adjudging the mechanic's liens as to the buildings to be prior liens to said mortgage, and directing a sale of the buildings to satisfy the respective mechanic's liens, and also adjudging the amount due on said mortgage, and also directing a sale of the 740.33 acres, and the entry of a personal judgment against the Elmo Park Company for any deficiency after the application of the proceeds of such sale to the mortgage debt.

On August 19, 1892, the attorney for the St. Paul Trust Company made affidavits setting forth that said Elmo Park Company asserted

[2] On April 20, 1892.

that said judgment was not binding and valid as a foreclosure of said mortgage; and upon the same the court made an order, which was served upon the Elmo Park Company, to show cause why said judgment should not be and remain in full force and effect as against all of said real estate, and why said district court did not have full power and authority to order and direct the sale of all of said real estate described in said mortgage. The Elmo Park Company did not appear or make any answer to the order to show cause. On the return day of the order, the district court made a further order, adjudging that said judgment should stand without modification, and that the whole of said real estate should be sold as therein ordered.

Subsequently, the whole 740.33 acres was sold under said judgment to the Iowa Land Company, and a deficiency judgment for a large amount was entered and docketed against the Elmo Park Company. This action was brought before the time for redemption expired under said sale. The 40-acre tract described in the lien actions is entirely surrounded by other land described in the mortgage or trust deed, but this mortgage or trust deed also described and covered other independent and distinct tracts of land not connected or used with the 40-acre tract, and leased by the Elmo Park Company to other persons, and by them, at the time of the commencement of the three lien actions, used, and since that time by them used and cultivated, as farm lands.

The important question to be determined is whether a mortgage covering several separate and distinct tracts of land can be foreclosed as to all of the mortgaged property, where a mechanic's lien holder brings an action to foreclose his lien upon one of these separate tracts, asking no other relief in his complaint, and makes the mortgagor a party to such action, and where such mortgagor does not appear, but the mortgagee does appear, and files an answer in the office of the clerk of the district court, as provided in G. S. 1894, § 6238, relative to the enforcement of mechanic's liens, and in such answer prays for a foreclosure of the mortgage upon all of the premises described in the complaint; the mortgagor having no actual notice of the relief demanded in the complaint, and no constructive notice unless such filing so operates.

If the question was merely whether a mortgagee of the premises upon which the mechanic's lien is claimed can be made a party, for

the purpose of having the existence, date, and amount of his mortgage lien determined in the lien action, it would be concluded by the decision of this court in Finlayson v. Crooks, 47 Minn. 74, 49 N. W. 398, 645. In the discussion of this question, it would be well to bear in mind the fact that the lien of mechanics and material men on buildings and the land upon which they are erected, as security for the value of services performed and materials furnished, is purely the "creation of statute." It was entirely unknown at common law or equity. Phillips, Mech. Liens, § 1. The rule of procedure for enforcement of mechanic's liens is to a great extent defined by the statute. The complaint is to be filed in the office of the clerk of the district court at the time of issuing the summons, which shall notify the defendant that the complaint has been filed, and that the action is for the foreclosure of a mechanic's lien. To this complaint the plaintiff must attach a bill of particulars of the items of the lien-claim. All parties who have mechanic's liens filed of record upon the same property, or any part thereof, shall be made defendants. The complaint must require an adjudication and foreclosure of the amount and validity of the lien-claim.

It may not be successfully asserted that, when these statutory proceedings to enforce the foreclosure of mechanic's liens have once been properly started in motion, any rules applicable to the usual course of law or equity cannot be invoked to aid in their successful final determination. But, because the court has judicial power to start the proceedings in motion, it does not necessarily follow that it has jurisdiction to draw into that proceeding a right to adjudicate upon the question of mortgage liens upon other separate and distinct pieces of land, not covered by the mechanic's lien-claim, and especially not described in the complaint, nor embraced within the relief therein demanded. The owner of the premises may properly be made a party, in order to have his interest in the premises adjudicated. But the plaintiff in such action has no right to bring in the owner of the premises, and invoke the jurisdiction of the court in respect to any other tract of land than the one affected by the mechanic's lien. When the complaint in this action was filed, and the Elmo Park Company served with notice to appear and answer, it related only to the 40-acre tract described in the complaint. The premises therein described were the subject-matter concerning which the ac-

tion was brought, and upon which the plaintiff's lien-claim was to be determined; and as to such matters, including other liens or rights in the particular 40 acres described, the court acquired jurisdiction, because that was the subject-matter for judicial decision, and regularly brought before the court.

What was the legal effect of the St. Paul Trust Company filing its answer in the office of the clerk of the district court, without serving it upon its co-defendant, the assignor of plaintiff in this action, and without giving it any notice of the pendency of any such proceedings? It is quite obvious that the lienholder only claimed that a certain sum was due him for work and material, for which he claimed a lien upon the building and 40 acres described in the complaint, and demanded the sale thereof to satisfy his demand; and that as between him and the mortgagee, whom he made a party to the suit, he claimed that his liens upon this particular 40 acres were prior and superior to the lien of the mortgage. It did not concern the plaintiff whether there were other parcels of land covered by the mortgage, and he therefore tendered no issue in regard to outside premises. It is true, he made the Elmo Park Company a defendant, not, however, for the purpose of taking hold of property unaffected by his mechanic's lien, but because it was the owner of the specific piece of property directly affected by it. It did not, however, dispute the plaintiff's right of lien, or the right to enforce it against the premises described, for the amount claimed; and so far it had a right to rely upon the plaintiff's further proceeding according to the issue tendered in his complaint. The St. Paul Trust Company, also defendant, filed its answer, as above stated, not merely as to the plaintiff and the piece of property affected by the complaint, but demanded other and further relief against its co-defendant.

The provisions of the mechanic's lien law for filing, instead of serving, pleadings, apply only to issues tendered by the complaint or expressly authorized by the statute, and not to pleadings in the nature of cross bills, setting up matters outside of and foreign to such issues. It would be relevant or pertinent for the defendant to set forth in such answer that there were other liens, by mortgage or otherwise, on the specified premises, or that he had other interests or rights in the property which would be affected by the plaintiff's lien action, and thus have the rights of the parties therein adjusted; but defend-

ants are not supposed to be notified of any demands against them except such as are made in the complaint, and, if one defendant asks for affirmative relief against a co-defendant as to matters which are embraced in the original complaint, he should ask leave of the court to file a cross bill, and take steps to have it answered by giving proper notice to such co-defendant. 1 Beach, Mod. Eq. Prac. § 445.

Ordinarily, a cross bill grows out of the matters alleged in the original bill or complaint, and is used to bring the whole dispute before the court, and usually it raises new issues which may present matters arising between co-defendants, but which are not shown by the original bill or complaint. Id. § 433. This is what was attempted in this case by the St. Paul Trust Company simply filing an answer, as required by the mechanic's lien law, which did not make it operate as a cross bill against its co-defendant, the Elmo Park Company, as to the subject-matter not embraced in the original complaint. Frequently a cross bill is used as a matter of defense only; and if we treat the answer filed by the St. Paul Trust Company as a cross bill, and assume that it may be used for giving affirmative relief beyond what could be afforded if confined to issues raised upon matters stated in the complaint, we must not lose sight of essential principles, one of which is that, when relief is sought by a pleading which operates as a new and original one, no one shall be personally bound until he has had his day in court, by which is meant until he has been duly cited to appear, and has been given an opportunity to be heard. "Judgment without such citation and opportunity wants all the attributes of a judicial determination. It is judicial usurpation and oppression, and can never be upheld where justice is justly administered." Galpin v. Page, 18 Wall. 350, 369.

It is claimed that Elmo Park Company had its day in court. True, it had it for one purpose, but the judgment was entered for another. It was cited to meet the charge of a mechanic's lien on 40 acres of land, and the judgment rendered sought to divest it of all its equity in the several hundred acres of mortgaged land, and to bind it by a personal judgment for a deficiency. And this judgment was based upon an alleged statutory contrivance for getting it into court in special cases, instead of the broad constitutional grounds that it should be brought into court only by due process of law. The record shows that, after it was served with the summons in the mechanic's

lien proceedings, it had no notice that any further claim would be made upon it. It is not the plaintiff in that case who seeks to bind the defendant upon the subject-matter outside of the property mentioned in the complaint, but the adversary proceedings are taken by another defendant without notice thereof. The danger of such practice is too apparent to need discussion, for this case illustrates it. The authorities also sustain this view of the law.

In Smith v. Woolfolk, 115 U. S. 143,[3] 5 Sup. Ct. 1177, the rule is stated as follows:

"It is settled that one defendant cannot have a decree against a co-defendant without a cross bill, with proper prayer, and process or answer as in an original suit. Walker v. Byers, 14 Ark. 246; Gantt's Dig. § 4559; Cullum v. Erwin, 4 Ala. 452; Cummins v. Gill, 6 Ala. 562; Shelby v. Smith, 2 A. K. Marshall, 504. It follows, from the reason of this rule, that if one complainant can, under any circumstances, have a decree against another upon a supplemental or amended bill, it must be upon notice to the latter. After a decree disposing of the issues and in accordance with the prayer of a bill has been made, it is not competent for one of the parties, without a service of new process or appearance, to institute further proceedings on new issues and for new objects, although connected with the subject-matter of the original litigation, by merely giving the new proceedings the title of the original cause. If his bill begins a new litigation, the parties against whom he seeks relief are entitled to notice thereof, and without it they will not be bound; for the decree of a court rendered against a party who has not been heard, and has had no chance to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other court."

Assuming, then, that it is the settled law that one defendant cannot have a decree or judgment against a co-defendant without proper prayer for relief and process or answer as in an original suit, so that such co-defendant had a chance to be heard, we come to the serious question of whether the judgment or decree in this case can be attacked collaterally. Collateral attacks upon judicial proceedings should not be encouraged, because, if successful, the tendency is generally to bring courts into disrepute, and property rights thereby often become wrested from innocent purchasers. But jurisdiction of the courts over the person and subject-matter is too essential to be disregarded, and, where either is wanting, it is a duty resting upon courts to fix the rights of the parties if they have the power to do

[3] At page 148.

so. We have no criticism to make upon the doctrine, so often stated in the law book, that judgments of courts of general jurisdiction impart absolute verity, and that every presumption will be indulged in favor of the record. But, if there is an apparent defect in the jurisdictional record, it may be impeached collaterally; as, for instance, where a summons either shows a want of service or insufficient service, and the record does not show that the court had found that it had jurisdiction, the presumption will be overcome, and it will be held that the court acted upon the insufficient service, since the presumption must then be that it acted upon the service then appearing in the record. Wells, Jur. 27; Clark v. Thompson, 47 Ill. 25. See, also, Barber v. Morris, 37 Minn. 194, 33 N. W. 559.

Now, what is the record in this action as to the former foreclosure proceedings, wherein plaintiff herein is sought to be bound, and its right to attack such proceedings collaterally is denied? By stipulation of the respective parties, the trial court in this action found the following facts, which must be deemed true, and to which no objections are made, viz.:

"That the answers of the defendant St. Paul Trust Company in each of the three mechanic's lien actions referred to in said findings and judgment were never served upon any of the other defendants in said three mechanic's lien actions, but that the same were filed in the clerk's office of this court, in each of said three actions, on the 28th day of October, 1891; that the defendant Elmo Park Company never appeared in the said three mechanic's lien actions, or took any part in the proceedings therein; nor did said Elmo Park Company appear or participate in the said proceedings had in the said three actions after the same were consolidated, in which the order of September 12, 1892, was entered, directing that the judgment in said consolidated action should stand and remain without modification or change, and that the real estate therein described should be sold as therein ordered."

The record was not one where, by reason of its mere silence, a conclusive presumption would arise as to the regularity of all proceedings necessary to confer jurisdiction upon the trial court, and therefore not impeachable collaterally. This finding forms the very groundwork for impeaching the judgment, within the rules of law which we have already stated, viz. that plaintiff was entitled to notice of the cross complaint, and, in default thereof, was entitled to rely upon these principles of law, and not bound to take notice of any proceedings under such complaint. Hence the court was without

jurisdiction to render judgment upon the new subject-matter embraced in the cross complaint, or against the plaintiff, the owner of the land, for a deficiency. · The record in this case itself establishes the invalidity of the former decree and judgment, and therefore it is impeachable collaterally.

We have not overlooked the effect suggested by filing the lis pendens, and the fact that the plaintiff herein was, after the rendition of the judgment in the former action, cited to show cause why it should not be bound by it and the proceeding had thereon. The office of a lis pendens is merely to charge subsequent purchasers with notice of the pendency of the action. Neither can a void judgment be validated by citing the party against whom it is entered to show cause why it should not be declared valid.

Judgment reversed.

CANTY, J. I concur in the result, but not in all that is said. There are many cases in which a cross bill might be filed without notice to the parties to be affected by it; and while the relief granted on such cross proceeding would be irregular, and subject to be set aside on motion or appeal, it would not be void for want of jurisdiction, and could not be impeached collaterally. If the matters brought in by the cross bill were germane to the matters already in litigation, this would undoubtedly be the effect of filing the cross.bill, and proceeding thereon without notice. But in the present case the matters brought in by the cross bill were clearly not germane to the matters already in litigation, but wholly foreign to them, so far, at least, as concerns the rest of the land except the 40 acres on which the houses were built, and as to the rest of the land except this 40 acres I am clearly of the opinion that the proceedings on the cross bill were absolutely void, and, as they appear on their face to be void, they can be impeached collaterally for want of jurisdiction.