NELLIE S. LARNED v. BENJAMIN BRISCOE, WILLIAM H. LANG-
LEY, JOHN B. STOUTENBURGH, JOHN A. STEWART,
AND THOMAS LEDBETER.

*Detroit board of public works—Required to keep a record of its proceed-
ings—Cannot change grade of street unless so authorized by a two-
thirds vote of common council—Contractors making excavations in a
street in front of land-owner's residence—Pursuant to such unan
thorized change of grade—Are liable as trespassers.*

1. The board of public works of the city of Detroit is a *quasi* corpora-
tion, invested by statute with important powers, and upon which
important duties are imposed. Although Act 392, Laws of 1873,
Vol. 3, creating said board, does not, in terms, require that it shall
keep a record of its proceedings, yet such record is required from the
*nature* of the duties imposed. The preparation of plans for laying
out streets, the approval of plats, the establishment of a system of
grades and of sewers, cannot rest in *parol*, or upon fugitive papers,
but the law plainly implies that such important acts shall be evi-
denced in the permanent form of a record.

2. Where the grade of a street in the city of Detroit, which had been
established by the common council prior to the passage of Act 392,
Laws of 1873, Vol. 3, organizing the board of public works of said
city, was changed by the board without the authority of the com-
mon council, as provided for in sections four and five of said act, the
excavation of such street in front of a land-owner's residence was
unauthorized, and the contractors making such excavation were lia-
ble in trespass for so doing.

Error to superior court of Detroit. (Chipman, J.)
Argued April 9 and 13, 1886. Decided July 15, 1886.

Trespass. Defendants bring error. Affirmed. The facts
are stated in the opinion.

*F. A. Baker,* for Ledbeter and Stewart; *H. M. Duffield,*
for remaining appellants:

It is settled law in this country that an action will not lie
against a city for changing the grade of a street: *Pontiac
v. Carter,* 32 Mich. 164.

*Conely, Maybury & Lucking,* for plaintiff :

Trespass is the proper remedy. The plaintiff's lot extended to the middle of the street, subject to the public easement for a highway : Cooley on Torts, 317–19 ; Dillon on Municipal Corp. 600 ; Angell on Highways, §§ 301–2.

Defendants having cut down this street without authority, trespass lies against them : *Clark v. Dasso,* 34 Mich. 86 ; *Chilson v. Wilson,* 38 Id. 267.

Even if plaintiff's fee did not extend to center of street, trespass is proper : *Rogers v. Randall,* 29 Mich. 41–2.

These defendants are liable the same as if they had no color of authority. The fact that some of them were public officers, and the others contractors with the city, does not afford immunity. They are liable to plaintiff the same as common trespassers : *Clark v. Dasso,* 34 Mich. 86 ; *Chilson v. Wilson,* 38 Id. 267 : *Cubit v. O'Dett,* 51 Id. 351.

CHAMPLIN, J. The plaintiff brought an action of trespass against the defendants.

The close is described in the declaration as—

"Lot No. 14 of the 'George B. Porter farm,' so called, in the city of Detroit, Wayne county, Michigan, said lot being situated on the north-east corner of Woodbridge and Twenty-fourth streets, in said city, and having a frontage of, to wit, 133 feet on Woodbridge street, and 250 feet on Twenty-fourth street, said lot extending to the middle of each of said streets, subject to the public easement for a highway."

The trespass complained of consisted of removing the soil of said close which lay within the limits of Woodbridge street along the entire frontage of said lot on said street, and also within the limits of the intersection of said street with said Twenty-fourth street, and taking and carrying away the soil, to a uniform depth of, to wit, six feet along the entire frontage, and thereby leaving the remainder of the plaintiff's close, to wit, six feet above the level of said Woodbridge street, on which said street said close fronted, and leaving a perpendicular precipice of, to wit, six feet between said street and the remainder of said close.

The defendants Briscoe, Langley, and Stoutenburgh pleaded the general issue.

The defendants Stewart and Ledbeter pleaded the general

issue, and thereunder gave notice that the plaintiff was not the owner of the fee, either subject to the public easement or otherwise, of that portion of Woodbridge street lying in front of lot 14 of the Porter farm, and had no right, title, or interest in or to, or possession of, the land and soil described in plaintiff's declaration as having been trespassed upon by said defendants, and that the same were, and still are, owned and possessed by the city of Detroit; that if the defendants excavated Woodbridge street, they did so under and by virtue and in performance of a contract between them and the city of Detroit for paving said Woodbridge street upon a grade fixed and determined by said city, and that defendants did no act upon said street except as such contractors, and in pursuance of said contract.

Upon the trial the plaintiff proved the excavation at the points named in the declaration, the defendants' participation therein, the damages occasioned thereby, and the plaintiff's title and possession of lot 14 of the George B. Porter farm, and rested.

The defendants introduced evidence which tended to show that the first three named defendants composed the board of public works of the city of Detroit, and that whatever they did in reference to the alleged trespass was by virtue of their official authority as members of such board; and the last two named defendants claimed to justify as contractors with said city for grading and paving Woodbridge street.

The board of public works was organized in the year 1873, under an act of the Legislature approved April 29, 1873. Laws of 1873, Vol. 3, page 175.

The fourth section provides—

That this newly-constituted board shall prepare, as soon as may be, a general plan of laying out into streets and alleys all such portions of the territory now or hereafter lying within the corporate limits of the city as shall not already be laid out, approved, and platted at the time of the taking effect of this act; or without the city limits, and within two miles thereof, when directed by the common council; and may enter upon land for that purpose. If approved, they shall indorse their approval on all plats of such street, or

alleys, etc.   They shall not have power to change such plats, when once approved and adopted by them, unless authorized so to do by a resolution of the council passed by a three-fourths vote of the members elect.

"Sec. 5.   They shall establish a system of grades for all streets and alleys within said corporate limits, and, when once established, no grade shall be changed except by a resolution of the council, as above provided.

"Sec. 6.   They shall establish a system of sewers for the entire city, and cause to be designated on said plats the streets through which the same are to be constructed," etc.

It appears that in 1866 a grade of Woodbridge street was established from Eighth street to the city limits, including the point in question, and that the same was recorded in the Book of Grades kept in the city clerk's office, and the street had been paved to, but not in front of, plaintiff's premises previous to the year 1882.   The street, however, in front of plaintiff's premises, was upon a level with the grade so established.   Twenty-fourth street has been improved, used, and traveled for several years, but no grade has ever been established upon this street.

The board of public works of the city of Detroit is a *quasi* corporation, invested by statute with important powers, and upon whom important duties are imposed.   Like other corporate bodies, they necessarily must act by vote, and their determination must be the determination of the board acting in its governmental capacity.

Although the act authorizing the organization of such board does not, in terms, require that it shall keep a record of its proceedings, yet such record is required from the nature of the duties imposed.   The preparation of plans for laying out streets, the approval of plats, the establishment of a system of grades and of sewers, cannot rest in parol, or upon fugitive papers, but the law plainly implies such important acts shall be evidenced in the permanent form of a record.   Yet it appears from the evidence that, for nearly ten years, the board of public works made no record of their action regarding the establishment of grades, but that recently the city engineer has entered in a book called a "Book of Grades,"

the grades which it is claimed have been from time to time established; and that upon Woodbridge street, claimed to have been established by the board of public works, was not entered in the Book of Grades until after this suit was commenced. There is no resolution, vote, or action of the board of public works establishing the grade of this street entered upon the records of the board. A profile or diagram of the grade was made by the city engineer, which was reported to the common council by a joint committee, consisting of the board and three aldermen, for the consideration and approval of the council, on the eighteenth day of July, 1882. The record before us does not disclose any action of the council looking to an approval of the change in grade, or of the report of the joint committee.

Upon the trial in the court below the counsel for plaintiff contended that the board of public works had never established a system of grades, as required by the fifth section of the act authorizing the creation of the board. The evidence upon this point was that, as a general thing, the board had not established the grade of any street until it was to be improved by being graded or paved, and then only on such portion as was to be improved; that the board had not established the grade of several of the streets crossing Woodbridge street, including Twenty-fourth street, and, in some parts of the city, grades were established upon portions of a street with spaces between, upon the same street, where no grade was established; and that there were many other streets upon which no grade had been established.

Upon this evidence the judge of the superior court charged the jury as follows:

"The action is for trespass. The claim is that the letting down of the grade was an illegal act. Under all the circumstances of the case, I think it is my duty to instruct you that it was an illegal act. Our law has provided that a system of grades shall be established by the board of public works. I fail to find anything approaching a system of grades, as exhibited by the testimony in this case. There is only one grade legally existing, according to the proof, and that is the only grade of 1866. There are no *data*—no facts—from which

anything can be gleaned that the board of public works have exercised the functions imposed upon them of establishing a system of grades.

"The object of the law is manifest. Its reason is beneficent. There can be no doubt that an evil existed, by which a grade could be established to-day and changed to-morrow. Before this law came into force the common council could do as they pleased upon that subject, and a man who built his house on a level with the street to-day might find it in the cellar to-morrow, or on a hill the next day. So that the object is to insure certainty; and the unquestionable meaning of that law was that a survey should be made of the city exactly as provision is made for drainage, and also for plats, which should comprehend the entire city, which is perfectly practicable,—as practicable as it is to plan a system of sewerage which would be based entirely upon the water side of the area to be drained. That was the intention of that law.

"That intention has not been carried out. I do not say that the board of public works are to blame. I think the law, in some respects, is at fault in not providing proper methods for putting it into operation. However that may be, that is the law, and, as that law exists, the common council have now no right to establish any grade whatever. While I have no doubt that the grades which were legally established there before, until changed by a plan adopted by the board of public works, would remain the legal grade, yet the common council have no power to establish any other grade. The power to establish grades, to alter grades, subsists entirely with the board of public works. They have not exercised that power, and consequently, if the cutting was done upon that street upon a new grade, it was done without authority of law. You therefore start in your deliberation from that point, and find that there was no legal grade, and, there being no legal grade, there was no legal authority for cutting down the street."

It seems to me that the construction placed by the judge of the superior court upon the statute requiring the board of public works to establish a system of grades for all streets and alleys within the corporate limits is too literal and restrictive. Establishing a system is one thing, and establishing a grade is another and entirely different thing. The language of the statute is not plain. It requires the board to establish a system of grades for all streets and alleys with-

in the corporate limits. The latter part of section 5 does not mean that when the system is once established no grade shall be changed, but it means that no grade, when once established, shall be changed except by a resolution of the council passed by three-fourths of the members thereof.

Section 6 requires the board to establish a system of sewers for the entire city, and cause to be designated on said plats the streets through which they are to be constructed. In establishing such a system it is plain that the main or trunk sewers must be constructed along the lower surface levels, with the view of conducting the water off from the higher surface levels, and from these laterals must be extended so as to afford suitable drainage to all parts of the city. But these laterals need not all be delineated on the map in the first instance. The system would be considered established without doing so, and they could be supplied as needed.

The objects to be accomplished by grades of streets are two-fold : (1) draft and (2) drainage. The first is to be considered with reference to the use to which the street is to be devoted,—whether for business purposes or residence; whether for the use of heavy vehicles and heavy loads, or for lighter carriages. The second requires that the inclination shall be sufficient to furnish drainage for surface water. The system, then, would be nothing more nor less than a plan or method by which these two objects shall be accomplished, and adapted in its application to all the streets of the city. It would contain or contemplate grades which should so incline to the plane surface as to drain the surface water of the street to the sewer already prepared, and of such ascent and descent as the public needs would require for use for business or residence purposes.

But this method or plan need not be all mapped out upon paper, and grades established upon all streets, before improvements can be made upon a particular street whose grade is established. The general scheme may be established and exist, and the particular grade be fixed as occasion may require, but always subordinate to the general purpose. It is evident that the system of grades must depend upon, and be

subordinate to, the established system of sewers. This is apparent, not only from the object to be accomplished by both systems, but from the language of section 6, which enacts : "No street shall be paved until the sewer to be constructed through the same shall be completed so far as the pavement is to extend." The sewers are the receptacles of the surface drainage of the streets, so that the grades established must, of necessity, be made with reference to the location of the sewers.

I do not think the liability of the defendants depends upon whether the board had established a system of grades, but upon the question whether the board had authority to change the grade established in 1866 without being authorized so to do by a three-fourths vote of the common council.

Previous to the passage of the act of 1873, under the charter and ordinances of the city, the corporate authorities had established the grade of a very large number of the streets and avenues in the city. Valuable buildings had been erected along the streets with reference to the grades so established, and any change thereafter made would seriously affect property rights. These grades were legally established, and were not abrogated by the act of 1873 establishing the board of public works in and for the city of Detroit. I think the intention of the fifth section of the act of 1873 was to make all grades once established, whether by the board or by the common council, permanent, unless a change should be authorized by a three-fourths vote of the common council.

No reason can be given why the language should be restricted to such grades as should be established by the board without the assent of the council, or why it should not be held to include the grades which the common council, in their wisdom, had established, and the streets improved and buildings erected thereon upon the faith of such grade. There are cogent reasons why the board should, unless authorized, be prohibited from changing existing established grades.

No such authority was asked for or obtained. The report of the board and committee in favor of the change of grade was not adopted by any vote of the common council. The

approval of the contract cannot be construed into an authority to change the grade. The question was not presented in the motion to approve the contract. The attention of the members of the council was not directed to that point, and it does not appear to have been discussed, while a neglect to adopt or non-action on the report of the joint committee is quite significant as indicating an inference that the authority was not given.

Moreover, it is quite apparent that the board assumed the authority to make the change without the consent of the council, and hence the question of authorization was not presented to the council for its action. It follows that the excavation of the streets adjoining plaintiff's premises was unauthorized, and the defendants were liable in trespass for so doing: Cooley on Torts, 317, 319; Dill. Mun. Corp. 600; *Cuming v. Prang,* 24 Mich. 514; *Tearney v. Smith,* 86 Ill. 391; *Brown v. Coward,* 14 Johns. 119; *Coventry v. Barton,* 17 Id. 142; *Fielder v. Maxwell,* 2 Blatchf. (U. S.) 552; *Tracy v. Swartwout,* 10 Pet. 80; *Smith v. Colby,* 67 Me. 169; *Buskirk v. Strickland,* 47 Mich. 389; *Cubit v. O'Dett,* 51 Id. 347.

The judge of the superior court instructed the jury that the lowering of the grade at the point in question was an illegal act, and in this instruction we think the court was correct. It results that the judgment must be affirmed.

The other Justices concurred.