ROBERT C. MUNGER *vs.* CITY OF ST. PAUL.

Submitted on briefs Jan. 10, 1894. Affirmed April 6, 1894.

No. 8556.

**Rights and powers of a city in the control and improvement of its streets.**

In the control and improvement of its public streets a municipal corporation, in the absence of any lawful restriction or regulation to the contrary, has the same rights and powers as a private owner has over his own land, and, as to abutting owners, is subject to the same liabilities.

**Evidence as to damages reviewed.**

*Held*, that in this case there was no evidence introduced or received upon the trial on which the jury could have awarded damages to plaintiff, an abutting property owner, alleged to have been caused by a permanent alteration of the established grade on a part of the street in front of his lots.

Appeal by plaintiff, Robert C. Munger, from an order of the District Court of Ramsey County, *J. J. Egan*, J., made June 20, 1893, denying his motion for a new trial.

Plaintiff owns vacant lots ten, thirteen, fourteen, fifteen, sixteen, seventeen and eighteen, in Munger's subdivision of block thirty-three in Arlington Hills Addition in St. Paul. The lots are on a sidehill and front south down hill onto Wells street, between Greenbriar avenue on the west and Walsh avenue on the east. These avenues cross Wells street at right angles. In 1892, the city graded

the street and avenues adjoining this block to their full width.
The north line of Wells street was graded down about twenty feet
below the natural surface of the ground.   The front of the lots was
thus deprived of lateral support and a considerable part of their
surface slid down into the street and was removed by the con-
tractor.   The city built a retaining wall in the center of the street
parallel with it and graded the south half of the street on a level
fifteen feet below the level of the north half.

The plaintiff brought this action to recover damages, (1st,) for the
falling away of the front of his lots, (2nd), for the change in the
grade on the south half of the street and the construction of the
center wall.   On the trial, May 10, 1893, the Judge charged the
jury that plaintiff was entitled to compensation for the first, but not
for the second.   The jury returned a verdict for plaintiff and as-
sessed his damages at $420.   He moved for a new trial for errors
in law and on the ground that the damages were grossly inadequate.
Being denied he appeals.

*Humphrey Barton,* for appellant.

The city charter provides for the establishment of grades and
for the changing of an established grade.   Sp. Laws 1887, ch. 7,
subch. 7, Title 3.·   The proviso in the charter for assessment of dam-
ages for a change of grade, gives a right to recover damages in this
case.   *McCarthy* v. *City of St. Paul,* 22 Minn. 527; *Taylor* v. *City
of St. Paul,* 25 Minn. 129; *Dore* v. *City of Milwaukee,* 42 Wis. 108;
*Smith* v. *City of Eau Claire,* 78 Wis. 457.

The city constructed the south half of Wells Street fifteen feet
below the established grade of the street.   This deprived plaintiff
of the use of one half the width of the street in front of his lots.
For this he is entitled to recover damages. . Plaintiff had an ease-
ment in the lower half of the street which easement was appur-
tenant to his land and the grading of the lower roadway and build-
ing of the retaining wall along the middle of the street was such
an interference with plaintiff's fee in the north half and easement
in the south half of the street as gives him a right to recover dam-
ages.   *Wilder* v. *De Cou,* 26 Minn. 10; *Brakken* v. *Minneapolis &
St. L. Ry. Co.,* 29 Minn. 41; *Adams* v. *Chicago B. & N. Ry. Co.,* 39
Minn. 286.

*Leon T. Chamberlain,* City Attorney, for respondent.

The streets in question are conceded to be public streets with established grades. The city therefore had a right to enter upon them and grade them or work them and make them passable. The city has the same rights in its streets that a private owner has in his property. *O'Brien* v. *City of St. Paul,* 25 Minn. 331; *St. Anthony Falls W. P. Co.* v. *King,* 23 Minn. 186; *Rich* v. *City of Minneapolis,* 37 Minn. 423; *Viliski* v. *City of Minneapolis,* 40 Minn. 304.

The city cannot be held for damages for grading Wells Street in such manner as to accommodate the public, either above or below the established grade, so long as it keeps within the line of the street unless it thereby affects the value or usefulness of improvements which have been made with reference to said grade.

If the city had no right to make a dual grade and if plaintiff had a right to damages to some amount on a proper showing, yet the exclusion from the consideration of the jury of this dual grade was proper, for the reason that no competent evidence of this damage appeared in the case. His witnesses expressly placed their computation of damages on other grounds than the dual grade.

COLLINS, J. The defendant city had caused the grades of Greenbrier avenue and Wells street to be fixed in accordance with its charter provisions, long before the work was done of which the plaintiff complains. His lots were located upon a steep hill, and faced south upon Wells street, which ran east and west along the side of the hill, and below the lots. On the center line of this street the grade had been established, so that, generally speaking, it was just about at the natural surface of the ground, and, necessarily, the south half of the street would have to be filled when graded, while the north half, on which plaintiff's lots abutted, would have to be excavated. The city had the undoubted right to enter upon the avenue and street for the purpose of bringing to grade, improving, and making them passable.

In the control and improvement of its thoroughfares for public use the city has the same rights and powers as a private owner has over his own land, and is subject to the same liabilities. It would be liable for damages caused to plaintiff's property by grading the avenue and street, just as a private owner of the soil over which

they were laid would have been liable when improving it for his own use; and the right to inflict damage beyond that which a private owner might have inflicted without liability did not exist. The city was authorized to grade, but without exercising the right of eminent domain it was not authorized to encroach upon plaintiff's property when so doing. It could not excavate to the full width of the street, placing or leaving the slope thereof upon his lots, to their injury and impairment. As we understand the evidence, this is just what was done; and with respect to the plaintiff's right to recover for an interference with the soil of his lots the jurors were fully advised in the charge.

As to the grading done, the facts were that to its full width the avenue was placed on the established grade, while the north half of the street,—that half on which plaintiff's lots fronted,—as before stated, was brought to the same condition. It was excavated where it ran along the sidehill, and worked down to the established grade, and of this alone the plaintiff could not complain. The city was not obliged to grade the street to its full width, and, without incurring any liability to the plaintiff, could have left the south half in a state of nature, impassable for teams, and of no value as a highway.

We will now consider the plaintiff's right to recover compensation for damages other than those resulting from an encroachment for slopes upon the soil of his lots. The important question is whether, on the evidence, he was entitled to recover for alleged damages arising out of the fact that, when grading, the city authorities, without altering the theretofore established gradient lines,—as authorized to do by the charter on making compensation to injured property holders,—caused a separate and distinct roadway to be constructed on the south half of the street, and a retaining wall to be built along its center line. Opposite plaintiff's lots this roadway was about fifteen feet below that on the north half of the street, constructed on grade, as heretofore mentioned. It is obvious from the evidence that the work was done so as to amount to a permanent alteration of the established grade on the south half of the street, and for the purposes of this case it must be so treated. Because of the peculiar circumstances, the city authorities had power, when primarily fixing the grade lines of this street, to pro-

vide for two distinct and separate roadways, although the inevitable result would be to deprive abutting owners of some of the advantages and benefits of a full-width thoroughfare, *Yanish* v. *City of St. Paul*, 50 Minn. 518, (52 N. W. 925;) and it is apparent in this case that access to the plaintiff's lots from the street itself was not rendered more difficult, nor did greater consequential damages result thereto, by reason of change in the gradation on the south or opposite side of the street. Nor was plaintiff deprived of any light or air. With all these facts presented in connection with the power of the city authorities to practically narrow the street when first establishing the grade, as settled in the *Yanish* Case, it would be somewhat difficult to state the correct rule for the ascertainment of plaintiff's damages, even if we concede that he was entitled to recover because of the establishment of two distinct levels in the street.

Nor does the case, as now before us, require the correct rule to be stated, for it is evident that plaintiff failed to show what his damages were, even within the rule as to the proper measure therefor his counsel now asks to have applied. Assuming, as counsel now contends, that where an established grade has been altered so that there are two levels in a street instead of one, an abutting owner is entitled to recover as damages the amount his property has been depreciated in value by reason of the alteration, it is plain that plaintiff's proofs were not produced with reference to this measure of damages. On his part the cause was tried and submitted upon the theory that he was entitled to recover the full amount that his lots had been lessened in value by reason of all grading; not only that which was unauthorized, because it resulted in a permanent roadway on the south half of the street fifteen feet below an already established grade, but also the consequential damages resulting from the authorized and lawful grading on the north half,—that work which was done in strict conformity with gradient lines theretofore properly fixed. The plaintiff's damages were proved in a lump sum. All of his witnesses, when making their estimates, took into consideration what it would cost to make the lots available for building purposes, either by constructing retaining walls in front and on the sides, or by removing the soil so as to lower the surfaces. These were consequential damages,

the result of placing the north half of the street on a lawfully established grade, and in no manner affected by the duality of roadways. As before stated, these were damages for which the city was not liable.

Counsel for plaintiff has called our attention to certain parts of the cross-examination of the plaintiff and one of his witnesses as to the depreciation in value caused exclusively by the lower roadway. Even if the measure of damages is as claimed by counsel, we do not hesitate to say that these witnesses, when answering the questions as to values before the work was done and diminution in value as the result of that work, kept continually in mind the consequential damages to the lots; in other words, that plaintiff was entitled to have the street graded to its full width of sixty feet, without the slightest injury to his property.

As there was no evidence upon which the jury could have intelligently acted when attempting to assess the damages arising out of the practical alteration of the grade on the south half of the street, assuming that the plaintiff was entitled to recover therefor, the rulings of the trial court challenged by the assignments of error last referred to were correct.

Order affirmed.

(Opinion published 58 N. W. 601.)

Application for reargument denied April 17, 1894.

