A majority of the court adhere to the original opinion.

----

# GUST A. WALLENBERG v. CITY OF MINNEAPOLIS and Others.[1]

### July 22, 1910.

### Nos. 16,569—(176).[2]

**City council of Minneapolis — street grade.**

The city council of Minneapolis has, under the charter of that city, the authority to establish street grades, but in making the improvement cannot take, destroy, or damage private property without compensation.

**Acts of city.**

The grading of a street by the street commissioner under the direction of the engineering department, pursuant to a resolution of the city council order-ing the construction of sidewalks upon a grade to be "given by the city en-gineer" and paid for with municipal funds, is the act of the municipality.

**Same — public officer not trespasser.**

The public officers who perform the physical acts required to make a pub-lic improvement, which, though irregularly made, is performed pursuant to the direction of the municipality, and is one which it is within the au-thority of the municpality to order, are not trespassers or personal wrong-doers.

Action in the district court for Hennepin county against the city of Minneapolis, Andrew Rinker, Ellis R. Dutton and Fred Bohm-

----

[1]Reported in 127 N. W. 422, 856.        [2]April, 1910, term calendar.

----

[Note]   Damage to abutting owner by first grading and improvement of street, see note to Hickman v. City of Kansas (Mo.) 23 L. R. A. 658; and note to Leiper v. Denver (Colo.) 7 L. R. A. (N. S.) 108.

bach, to recover $2,000 damages for grading and lowering Melbourne avenue, a public street, in front of plaintiff's land.

The amended complaint alleged that plaintiff became the owner of the property in the year 1890 and thereupon erected a dwelling house thereon for the use of himself and family with reference to the street as established; that at that time Melbourne avenue was a public street, the dedication of which had been duly accepted by the city, the same had been graded by the city and was in daily use as a public street; that during the years 1906 and 1908 defendants, without plaintiff's consent and without compensating plaintiff for any damage to his property, wrongfully and unlawfully entered upon plaintiff's property and Melbourne avenue and changed the grade of Melbourne avenue by lowering the same eight feet immediately in front of plaintiff's property and grading the avenue down eight feet below the grade which had been in existence and maintained from the year 1890, and defendants removed therefrom, in front of plaintiff's premises, the dirt to an extent of eight feet below said former grade and removed the lateral support from the front of plaintiff's lot, whereby the earth and soil in front of plaintiff's lot was allowed to fall into the street to the extent of about five feet back from the street line, and defendants also removed the dirt from the front of plaintiff's lot in connection with the work of lowering the grade; that by reason of the work done the reasonable market value of the property depreciated from $3,500 to $1,500; that in order to use plaintiff's property for any purpose, it will be necessary to grade the same down a distance of eight feet and lower the buildings thereon to the same extent; that in order to so lower the property, the trees and shrubbery would be totally destroyed.

The answer of defendant city and the answers of defendants Rinker and Dutton admitted the existence of Melbourne avenue; that it was dedicated as a public street and highway, and expressly denied that plaintiff has been damaged in the sum of $2,000 or any sum whatever. In his separate answer defendant Bohmbach alleged that in his capacity of street commissioner it was his duty to keep streets safe and passable; that Melbourne avenue was not safe and passable,

and the city engineer fixed and established the grade of the avenue and drove the stakes according to such grade and defendant, subject to the directions of the engineer, supervised the work of making the avenue conform to the grade. The reply was a general denial.

The case was tried before Dickinson, J., who directed a verdict in favor of the defendant. From an order denying plaintiff's motion for a new trial, he appealed. Reversed as to defendant City of Minneapolis. Affirmed as to defendants Rinker, Dutton and Bohmbach.

*Gjertsen & Lund,* for appellant.

*Frank Healy,* City Attorney, and *A. C. Finney,* Assistant City Attorney, for respondent city.

*Clyde R. White,* for respondents Rinker and Dutton.

*Benj. Davenport,* for respondent Bohmbach.

O'BRIEN, J.

Plaintiff, as the owner of improved property fronting on Melbourne avenue, Minneapolis, brought this action to recover damages for grading and lowering the street in front of his premises. The city engineer, his assistant, and the street commissioner were joined with the municipality as defendants. The engineering department of Minneapolis long ago fixed a basic elevation from which to establish street grades, and in 1884 a plat of Melbourne avenue was filed in the department, showing the relation which the natural surface of the street bore to this base. Some time prior to 1890, when plaintiff purchased and improved his property, the street had been opened and irregularly graded, leaving plaintiff's property about seven feet above grade. The surface of both the property and the street in front was higher than that upon either side. Early in 1907 plaintiff, with other adjacent property owners, signed the following petition:

"Minneapolis, Minn., April 1, 1907.

"We, the undersigned, residing on or near Melbourne Avenue Southeast, Prospect Park, do petition and request: That the above said street be filled and put on grade this season as early as possible,

as it is rendered impassable in the spring of the year by standing water."

Plaintiff testified he expected this request would reach the city officers and would be acted upon, but the record does not show just what was done with the petition. In the following August, 1907,[1] the city council by resolution directed the construction of sidewalks upon both sides of the street; the resolution concluding: "Such sidewalk is directed to be laid upon lines and grades given by the city engineer." In April, 1908, plaintiff signed a notice, addressed to the city engineer, to the effect that plaintiff had authorized a contracting firm to construct a stone sidewalk in front of his property. In July, 1908, the defendant Bohmbach, under the direction of some one in the engineering department, the particular officer or employee, however, not being shown, graded the street its full width to the level indicated upon the plat of 1884, lowering the street in front of plaintiff's property some seven or eight feet more, taking from the property its lateral support to that extent, and requiring a sloping bank upon the property. The grading was done by the city employees, paid for by the city, and the city subsequently levied and collected an assessment to meet the expense. After the work was begun, and, as he claims, as soon as plaintiff realized the depth of the cut, he protested against it.

The charter of the city contains this provision: "The city council shall have power to establish the grade of any street, when such grade has not been established, and may by a vote of two-thirds of the members of the council change the grade of any street after such grade has been established. It shall cause accurate profiles of the grades of all streets to be made and kept in the office of the city engineer." A verdict for defendants was directed, and plaintiff appeals from an order denying a new trial.

1. The first question for consideration is whether or not Melbourne avenue was graded under the authority of the municipality. There can be but one answer.

It is true the grade was never established in accordance with the

[1] See following opinion, infra, page 477.

charter provision. The plat of 1884 did not purport to fix the grade, nor was it adopted by the city council. The opening of the street and its partial grading prior to 1890 was evidently carried only far enough to make the street available for travel. The resolution of the common council ordering the construction of sidewalks upon the grade to be fixed by the city engineer was not an establishment of the grade by the city council, so that the record shows the grade of the street in front of plaintiff's property has never been legally established. At the same time it is equally apparent that the actual grading of the street complained of was done by the municipality, through its regularly constituted officers and under its direction. We have in the first place the direction of the city council, the governing body of the municipality, for the construction of the sidewalks, a determination of the grade lines by the engineering department, and the actual performance of the work by the street commissioner and payment of the cost by the city. It is as plain a case as could well be imagined of a public improvement made by a municipality, but in an irregular and unauthorized manner. Dillon, Municipal Corporations (4th Ed.) § 971.

We do not think, however, that plaintiff's claim for damages is materially affected by the failure of the city to legally establish the grade of the street. Whatever claim he has must rest upon the taking or damaging of his property without compensation.

2. In Alden v. City of Minneapolis, 24 Minn. 254, it was held that a municipality might exercise its judgment in establishing the first or original grade of a street under its direction and control, and that it might, without being responsible in damages to abutting property owners, reduce a street to the grade so established. Later it was held that where the municipality encroached upon the abutting property, and deprived it of its lateral support, rendering it necessary to construct slopes or retaining walls outside of the lines of the street, the owner was entitled to any actual damage sustained by reason of taking from his property the lateral support it previously enjoyed. Dyer v. City of St. Paul, 27 Minn. 457, 8 N. W. 272; Nichols v. City of Duluth, 40 Minn. 389, 42 N. W. 84, 12 Am. St. 743; Munger v. City of St. Paul, 57 Minn. 9, 58 N. W. 601. These

decisions were rendered prior to the amendment of the constitution in 1896, and under them this plaintiff would have a right of action, not because by the grading the surface of his property was left above the level of the street, but because of the removal of its lateral support.

In 1896, section 13 of article 1 of the constitution was amended so as to read: "Private property shall not be taken, *destroyed or damaged* for public use, without just compensation therefor first paid or secured." The words added are italicized. Under the constitutional provision as amended it was held in Sallden v. City of Little Falls, 102 Minn. 358, 113 N. W. 884, 13 L. R. A. (N. S.) 790, 120 Am. St. 635, that when abutting property is actually damaged by the grading of a street to the first or original grade established, the owner may recover.

It is apparent, therefore, that under all the decisions of this court the plaintiff may recover, unless he is estopped by reason of having made a petition or request to have the street graded.

3. The request or petition for the grading of the street, signed by plaintiff, appears to bear no address, but presumptively was intended to reach the proper municipal authorities. It only requested the municipality to exercise its undoubted right to grade the street, and must be taken as a request for the making of that improvement in a legal manner and with due regard to the rights of the property owners. Assuming that the petition was the moving cause of the doing of the work, it was the duty of the municipality to proceed in accordance with law, establish a grade, determine the manner in which the street should be graded, and by condemnation or other proceedings acquire the right to use or occupy any portion of the abutting private property necessary for the completion of the improvement. We entirely fail to see how any greater effect than this could be given to the petition, and it in no manner estopped the plaintiff from insisting upon being compensated for damages sustained by him by reason of the actual taking of any of his property. Whether because of this request by plaintiff his damages must be limited to those occasioned by depriving the property of its lateral support is hardly before us, and upon that we express no opinion.

4. As already said, we find this grading to have been performed

by the municipality, but in an irregular manner. However, the resolution of the common council directing the construction of the sidewalks upon the grade to be fixed by the city engineer amounted to a direction to that officer and his subordinates to make a public improvement which it was within the undoubted authority of the municipality to make. We are therefore inclined to think that none of the individuals who have been joined as parties defendant with the municipality should be considered trespassers or individual wrongdoers to an extent which would render them personally liable. Such officers or employees should not be required to determine at their own risk the legality of the proceedings pursuant to which they performed the acts complained of. They acted in good faith and in obedience to the direction of the governing body, and while the question is a close one, in view of our holding that the grading of the street must be held to be the act of the municipality, that its omission to take the prescribed legal steps amounted only to an irregularity, and did not alter the fact that it had general authority and control over the street, we have concluded that the direction of a verdict in favor of those individuals was correct. 29 Cyc. 1441; Larned v. Briscoe, 62 Mich. 393, 29 N. W. 22; Curtiss v. Witt, 110 Mich. 131, 67 N. W. 1106; Throop, Public Officers, § 736; Morrison v. Howe, 120 Mass. 565.

The order denying a new trial is reversed as to the defendant city of Minneapolis, and affirmed as to the defendants Rinker, Dutton, and Bohmbach.

On October 7, 1910, the following opinion was filed:

PER CURIAM.

The statement of facts in the original opinion was not accurate, for which reason and because of the importance of the case a reargument was granted.

It appears that the sidewalk ordered by the resolution of August 16, 1907, did not extend directly in front of plaintiff's property or approach that property nearer than one hundred feet. A second resolution, approved August 20, 1908, did extend the stone walk

across the front of plaintiff's property, but in the meantime the grading complained of had been performed. The assessment referred to in the original opinion did not include the cost of the grading, which was paid for out of the ward fund, but was only to meet the expense of the sidewalk. Respondent also contends that the payments from the ward fund to the persons who actually did the work of grading were made without any knowledge upon the part of the city officers that such payments included pay for time spent upon this work of grading.

1. We do not think any of these matters material. We still think that the whole course of this proceeding shows a municipal improvement, made by a municipality in an irregular manner, but for which the municipality must accept the responsibility.

2. Counsel for the city insist with great vigor that in our former decision we erred with regard to the effect to be given plaintiff's petition or request that the street be graded. A careful reconsideration of the question has failed to change our views as already expressed.

The evidence in the case shows an actual trespass upon private property, and, in the absence of a specific release by plaintiff or proceedings by the city giving it the right to take the portion of plaintiff's property required for the slopes, his request for the grading of the street cannot be given any greater effect than as stated in the original opinion. We carefully refrained from holding that under the circumstances plaintiff was entitled to any damages except those occasioned by depriving his property of its lateral support. It may well be that plaintiff having petitioned for the improvement of the street cannot now claim damages because its proper grading leaves the surface of the street lower than the surface of plaintiff's property, but it seems entirely clear that the request or petition did not authorize the actual taking of plaintiff's property, which was done by taking its lateral support, thus requiring either a retaining wall or the construction of slopes outside of the street lines. In Sallden v. City of Little Falls, 102 Minn. 358, 113 N. W. 884, it was held that, where damages to abutting property resulted from changing the natural level of the surface of the street, the owner of the property

so damaged was entitled to compensation, although the grading was the first grading and as originally established by the municipality. These were described as consequential damages. Where property is actually taken for slopes the damages are direct. We hold the right to compensation for such direct damages was not in this case waived by the request to grade. Whether or not the consequential damages were waived is left open for consideration after that particular question has been fully considered by the trial court.

It is urged that the city of Minneapolis has no power to bring condemnation proceedings to obtain the right to construct slopes or determine the amount of what have been denominated consequential damages. Such fact would not change the result as announced nor warrant this court in giving plaintiff's request for the improvement the construction contended for.

We therefore adhere to our opinion as given upon the original argument.