## JANE L. AUSTIN and Others v. VILLAGE OF TONKA BAY.[1]

July 16, 1915.

Nos. 19,291—(202).

**Bridge in village.**

1. By chapter 164, Laws of 1905, and the acts amendatory thereof, the legislature gave counties having more than 150,000 population authority

[1] Reported in 153 N. W. 738.

Note.—The authorities passing upon cutting off access to a highway as a taking or injury are reviewed in a note in 15 L.R.A.(N.S.) 49.

For cases passing upon the liability of a municipality for injury to abutting owner from approach to bridge under constitutional provision against "damaging" private property for public use without compensation, see note in 36 L.R.A.(N.S.) 1198.

to construct bridges and approaches thereto within villages without the con-sent or concurrence of the village.

**Compensation for injury to private property.**

2. Damaging private property abutting upon a highway by constructing an embankment in the highway is an invasion of the rights of the owner of the property for which section 13, article 1, of the Constitution requires compensation to be made.

**Right of action by landowner.**

3. Where none of the property itself is taken and the damages thereto are consequential only, the right of the owner to go into court and compel the municipality which invades the rights secured to him by the Consti-tution to make compensation therefor, satisfies the constitutional require-ment that such compensation shall be secured to him.

**Liability to pay.**

4. The obligation to pay such compensation rests upon the political sub-division or municipality of the state that invades such right, where the legislature has made no other provision for the payment thereof.

**Same — county liable.**

5. In the present case, the county invaded such right but the village did not, and the duty to make compensation rests upon the county and not upon the village.

Action in the district court for Hennepin county against the county of Hennepin and village of Tonka Bay to recover $2,000 for injury to plaintiffs' property. The case was tried before Dickinson, J., and a jury which returned a verdict for $500. The motion of defendant village for judgment notwithstanding the verdict was denied. From the judgment entered pursuant to the verdict, defendant village of Tonka Bay appealed. Reversed.

*Laybourn & Lucas,* for appellant.
*Belden & Safford,* for respondents.

TAYLOR, C.

In 1888, the county of Hennepin constructed a canal or waterway, known as the "narrows," connecting upper Lake Minnetonka with lower Lake Minnetonka; and, apparently in the same year, laid out and established a county road which passed over the narrow neck of land between these lakes and crossed this canal. Travelers upon

the highway were conveyed across the canal by a ferryboat. In 1901 Tonka Bay was incorporated and organized as a village, and that part of the county road within the limits of the village became a village street and was used as such. The canal forms the boundary between the village on the east and the town of Orono on the west. In 1911 the county of Hennepin began the erection of a bridge across the canal and completed the work in 1913. The bridge was placed at a sufficient height above the water to permit the passage of sailboats thereunder; and, to provide suitable approaches thereto, the county constructed high embankments, extending from the bridge along the highway for a considerable distance in each direction. The easterly approach and easterly half of the bridge are within the village of Tonka Bay, and the westerly approach and westerly half of the bridge are within the town of Orono.

Plaintiffs own lots in the village of Tonka Bay adjacent to the bridge and abutting upon the highway upon which the easterly approach is constructed, and brought suit against both the county of Hennepin and the village of Tonka Bay for damages to their property, resulting from the erection of the embankment in front of it. The county demurred to the complaint and the demurrer was sustained by the trial court. The village answered and the case was tried between plaintiffs and the village and resulted in a judgment against the village. The village appealed.

That plaintiffs are entitled to damages is not seriously questioned by any one; and the real controversy is whether the county or the village is liable therefor. The village contends that the liability rests upon the county and not upon the village. The trial court held that it rested upon the village and not upon the county, and the correctness of this ruling is the important question in the case.

The bridge and the approaches thereto were constructed wholly by the county, and the village took no part therein. Chapter 164, p. 202, Laws 1905, and the acts amendatory thereof, gave counties having more than 150,000 population authority to make such improvements as those in question without the assent or concurrence of the village. The county proceeded under this statute and entirely ignored the village. The statute does not state in express terms

how or by whom the damage to private property, resulting from such improvements, shall be paid. It is well settled that, under existing law, cities and villages are liable for damages caused by defects in their streets, and that counties are not liable for damages caused by defects in county roads; but it should be borne in mind that this is not an action to recover damages resulting from defects in the highway. This is an action to recover compensation for private property taken for public use. It is based upon the following self-executing provision of the Constitution: "Private property shall not be taken, *destroyed or damaged* for public use, without just compensation therefor first paid or secured." Const. art. 1, § 13. Constructing the improvement in question, so far as it caused damage to the property of plaintiffs, was in substance an exercise of the power of eminent domain. While the land of plaintiffs was not taken, the constitutional provision as it now stands entitled them to compensation for the consequential injury thereto. Sallden v. City of Little Falls, 102 Minn. 358, 113 N. W. 884, 13 L.R.A.(N.S.) 790, 120 Am. St. 635. Prior to the amendment of 1896 by which the italicised words, "destroyed or damaged," were added to the constitutional provision, the property owner had no remedy for the injury to his property caused by the change in grade of a highway; but since that amendment he is entitled to compensation for such injury. 2 Dunnell, Minn. Dig. § 6650, and cases there cited. The compensation to which plaintiffs are entitled is for the consequential damage to their property caused by the embankment, not for taking the *corpus* thereof. If the *corpus* of the property were taken, provision for compensation must be made prior to such taking; but where none of the property itself is taken, the right of the owner to go into court and compel payment for the damage thereto by the municipality which invades his constitutional right, is deemed sufficient security to satisfy the above requirement. In Vanderburgh v. City of Minneapolis, 98 Minn. 329, it is said at page 338 [108 N. W. 480, 482, 6 L.R.A.(N.S.) 741]:

"The damages for injuries of this nature, where no property is actually taken, are consequential, not direct; no person is actually deprived or dispossessed of his property, and the authorities hold that

prepayment is unnecessary. The damages in such cases may be recovered against the municipality. Dickerman v. City of Duluth, 88 Minn. 288, 92 N. W. 1119. That remedy is adequate and sufficiently protects all constitutional rights. Of course, this rule would not obtain in any case where the property owner is actually dispossessed or deprived of his property." And again at page 340 [108 N. W. 483]:

"We accordingly hold that inasmuch as no property of plaintiff was actually taken, and his damages are consequential only, it was not necessary as a condition to the right of the city to vacate the streets that the damages be first ascertained and paid. In some of the states whose decisions we have referred to express statutory provisions require the payment of damages in such cases. But in view of the fact that the municipality is liable therefor at the suit of the injured party, express legislative command in that respect is unnecessary. The Constitution creates the right to redress, and the right thus given can neither be enlarged nor diminished by legislation. Since the property of the municipality is a fund to which the injured party may resort by appropriate action in the courts, means for ascertaining and enforcing payment of compensation are sufficiently provided."

The reasons for the rule are fully set forth in the case cited. That case involved damages resulting from the vacation of streets; but the same rule is applied in respect to damages resulting from a change in the grade of streets. Dickerman v. City of Duluth, 88 Minn. 288, 92 N. W. 1119; Wallenberg v. City of Minneapolis, 111 Minn. 471, 127 N. W. 422, 856, 20 Ann. Cas. 873; Hirsch v. City of St. Paul, 117 Minn. 476, 136 N. W. 269.

The above cases are all against cities; none of them is against a county. But the logic of all of them is to the effect that the municipality which invades the right conferred upon the property owner by the Constitution must respond in damages therefor. The case of Tyler v. Tehama County, 109 Cal. 618, is quite similar to the case at bar. In that case as in this, the county had constructed a bridge which caused damages to plaintiff's property and plaintiff sued to recover therefor; the original Constitution provided that private

property should not be taken for public use without just compensation, and under such provision the county was not liable for mere consequential damages; but the Constitution had been amended so as to provide that "private property shall not be taken * * * *or damaged* for public use without just compensation."

The court held that the amended Constitution, prohibiting the damaging of property without making compensation therefor,[1] rendered the county liable for the damage in question, and that the rule which exempted counties from liability for personal injuries did not apply to such cases. Under a constitutional provision requiring "municipal and other corporations" to make just compensation for property injured by public work, it is held that counties are liable for damage to private property resulting from the construction of bridges or the change in grade of a highway by the county. Dallas County v. Dillard, 156 Ala. 354, 47 South. 135, 18 L.R.A.(N.S.) 884; Chester County v. Brower, 117 Pa. St. 647, 12 Atl. 577, 2 Am. St. 713; Layman v. Beeler, 113 Ky. 221, 67 S. W. 995; Riddle v. Delaware County, 156 Pa. St. 643, 27 Atl. 569.

In Schussler v. Board of Co. Commrs. of Hennepin County, 67 Minn. 412, 70 N. W. 6, 39 L.R.A. 75, 64 Am. St. 424, it is held that the county of Hennepin was liable for damages to the plaintiff's property, caused by a dam built by the county across Minnehaha Creek, for the purpose of maintaining a uniform height of water in Lake Minnetonka. In Viebahn v. Board of Co. Commrs. of Crow Wing County, 96 Minn. 276, 104 N. W. 1089, 3 L.R.A. (N.S.) 1126, it was held that the county of Crow Wing was liable for damages caused by constructing a bridge across the Mississippi river.

It may be conceded that where a village is incorporated and includes within its territory part of a county road, the portion of the road within the village, as a general rule, becomes a village street and subject to the control of the village; but it is entirely competent for the legislature to give a county control over public highways within the village to any extent it may see fit. The county constructed the improvement in question under direct authority from the legislature. In doing so it took plaintiffs' property within the mean-

[1] [California Const. 1879, art. 1, § 14.]

ing of the Constitution. The Constitution prohibited it from taking such property "without just compensation therefor first paid or secured." No compensation has been paid in the present case, and the only security therefor is the right of action arising from the invasion of plaintiffs' rights. These rights were invaded by the county, not by the village; and we think the village is not liable for an invasion of such rights which the village not only did not commit but could not prevent the county from committing. It is true that the legislature might have imposed the obligation to recompense plaintiffs for such damages upon either the county or the village, or might have made other provision therefor; but, until the legislature sees fit to direct differently, the duty imposed by the Constitution to make compensation for taking or damaging private property for public use must rest upon the political subdivision or municipality of the state which takes or damages such property. It clearly appears that the county, not the village, invaded plaintiffs' property rights, and the county, not the village, should make compensation therefor. Of course it is the duty of the village to keep its streets safe for travel, but no failure to perform such duty is involved in the present case.

Judgment reversed.

