240 Minn. 154 (1953)
HAROLD C. JOHNSON
v.
COUNTY OF STEELE AND ANOTHER.[1]
No. 35,944.
Supreme Court of Minnesota.
August 7, 1953.
*156 Leach & Leach, for appellant.
Byron J. Casey, for respondent county of Steele.
Lord & Walbran, for respondent P.C. Hosfield.
PER CURIAM.
This is an action in nuisance and trespass brought by a landowner for alleged invasions and appropriations of his property during certain ditch construction work. Plaintiff appeals from the orders sustaining the separate demurrers of the two defendants.
The complaint alleges that the county board of defendant county, pursuant to a petition asking for a "repair" of a certain ditch running through plaintiff's land, appointed defendant P.C. Hosfield to prepare the necessary plans and specifications to make this ditch "function efficiently." The county accepted the plans and specifications prepared by Hosfield and let a contract for such work. Hosfield supervised the actual construction work. The complaint alleges that such purported "repairs" were in fact "improvements" and that the ditch was "widened, deepened, changed and altered," thereby appropriating and damaging plaintiff's land and washing out a bridge owned by plaintiff. Plaintiff asked for treble damages under authority of M.S.A. 548.05.
Defendants each demurred on the grounds that the facts stated did not constitute a cause of action. No explanation or argument was offered in the motion, and the record does not contain a transcript of any oral argument. The order is also silent regarding the reason that the complaint fails to state a cause of action, and no memorandum accompanies the order.
1. In support of the demurrer, respondent county first contends that the complaint does not state a cause of action because the allegation that the purported "repairs" were in fact "improvements" is a mere conclusion of law and unsupported by factual allegations. The allegation that defendants "widened, deepened, changed and altered" the channel and extended the waste banks is a sufficient *157 factual allegation to support the legal conclusion that the alterations constituted an "improvement" of a ditch. See, Opinions Attorney General, File 602-J.
2. The county also contends that it is uncertain whether it is plaintiff's claim that the plans and specifications were erroneous and the contract and actual construction followed them, or whether he claims that the plans and contract were within the authorized limits but the actual construction work exceeded these limits. The complaint alleges the acceptance of the plans and specifications, the letting of "a contract therefor," and the eventual construction of the "purported repairs," which were in fact "improvements." Although possibly subject to a motion to make more definite and certain, a comprehensive reading of the complaint compels the conclusion that it is plaintiff's contention that the plans and specifications, and the contract let pursuant thereto, called for construction work amounting to "improvements."
The complaint does not allege that proper notice and hearing, as required by the "repair" provision of the statutes,[2] were not given, and thus we must presume that all required procedural steps were taken. 7 Dunnell, Dig. (3 ed.) § 3435.
Assuming that all the well-pleaded factual allegations are true as we must in testing a complaint, the situation presented is one in which a county board received a petition asking for a "repair" of a certain ditch. Such petition could only qualify as a "repair" petition and not as an "improvement" petition because of the limited number of signers. Pursuant to this petition, the board appointed defendant Hosfield as engineer to prepare the necessary plans and specifications "to make said ditch function efficiently." The engineer prepared plans and specifications which called for widening, deepening, altering, and changing the existing channel. Plaintiff was notified of a hearing, at which time he would have been entitled to such information as could have been given by the engineer.[3] *158 After such hearing, the county board accepted the plans and specifications and ordered the letting of a contract for the construction work proposed; the same engineer supervised such work. The work amounted to a widening, deepening, and altering of the original channel, thereby appropriating and damaging plaintiff's land and washing out the bridge owned by plaintiff. Plaintiff at no time appealed from the order of the county board, as provided by statute,[4] but brings a common-law action in nuisance and trespass to recover for such damages.
3. There is a fundamental difference between a "repair" proceeding and an "improvement" proceeding both substantively and procedurally. Substantively, a "repair" proceeding contemplates only the restoration of the ditch to its original condition without in any manner changing or altering its channel. See, County of Brown v. Martinsen, 153 Minn. 268, 190 N.W. 255; Opinions Attorney General, File 602-J. Thus, the "repair" statute makes no provision for an award of damages since, under proper procedure, a "repair" will not affect the land through which the ditch flows other than the damage occasioned by the original establishment of the ditch for which the landowners presumably were fully compensated at that time.[5] The "improvement" proceeding, on the other hand, contemplates extension and alteration of the original ditch with resulting damages to private property. Thus, the "improvement" statute, § 106.501, provides for awarding damages to owners of land damaged by such work.
Procedurally, a "repair" proceeding requires only the filing of a petition by any party interested in or affected by the drainage system in order for the board to order a hearing and eventually *159 authorize the repairs.[6] However, the "improvement" statute is quite specific in providing that, before any drainage system shall be "improved," a petition signed by not less than 26 percent of the owners or property affected must be filed. The complaint in the case at bar specifically alleges that the petition could not qualify as an "improvement" petition in that, among other things, such petition was not signed by such proper number of petitioners.
4. Provisions in statutes regulating the construction of public drains and designed for the protection of landowners must be strictly followed. 6 Dunnell, Dig. (3 ed.) § 2821. Thus, it has been held that a petition signed as required by statute is a jurisdictional prerequisite to the establishment of a ditch system. State ex rel. Utick v. Board of Co. Commrs. 87 Minn. 325, 92 N.W. 216, 60 L.R.A. 161; County of Martin v. Kampert, 129 Minn. 151, 151 N.W. 897; In re Judicial Ditch No. 9, 167 Minn. 10, 208 N.W. 417; In re Judicial Ditch No. 12, 227 Minn. 482, 36 N.W. (2d) 336, certiorari denied, 337 U.S. 938, 69 S. Ct. 1514, 93 L. ed. 1743; In re Judicial Ditch No. 10, 171 Minn. 478, 214 N.W. 285. Since an "improvement" proceeding equally contemplates the taking and injury of land not otherwise damaged and appropriated by the original ditch establishment, it follows that the proper petition is also a jurisdictional prerequisite to an "improvement" proceeding. Since the complaint alleges that there was no proper petition for an "improvement" here, it would appear that the county was without jurisdiction to order any construction other than "repairs."
5. Respondent county contends, however, that the board had jurisdiction over plaintiff's land by virtue of M.S.A. 106.181. This section provides that upon due publication, posting, and mailing of the notice of final hearing the board shall have jurisdiction of all lands and properties described in the engineer's and viewers' *160 report.[7] The county contends that, since plaintiff admits the establishment of the ditch, it therefore conclusively appears that the board had jurisdiction over plaintiff's land from the time of the establishment of the ditch and that, consequently, plaintiff cannot collaterally attack the order authorizing the present construction work. The county's argument necessarily calls for us to interpret this section as giving the county perpetual jurisdiction over the land included in the original ditch establishment proceedings. Such an interpretation would leave all the lands included in the notice of the ditch establishment thereafter subject to the arbitrary orders of the county board as to changes and alterations of the original ditch. The county could order a change of channel or even a new ditch through those lands without following the statutory procedure, and the remedy of the owners of the land thus appropriated or damaged would be limited to appealing, within a very short time, from the order of the county board authorizing such changes although the county may never have notified the landowner of such new order. Such an interpretation would be contrary to provisions of both federal and state constitutions. It is our opinion that § 106.181 gives the county jurisdiction only to proceed with such work as was set out in the establishment petition and included in the notice, publication, and hearing and that, if further work is to be performed, jurisdiction must be procedurally re-established. See, State, by Peterson, v. Bentley, 216 Minn. 146, 152, 12 N.W. (2d) 347, 351.
6. Thus, under the facts alleged, the county was without jurisdiction to appropriate or damage plaintiff's land and property, and any "improvements" of the ditch were completely without authority of law. Our statutory drainage proceedings invoke the power of eminent domain. In re Town Ditch No. 1, 208 Minn. 566, 295 N.W. 47. In those proceedings, a judgment or order rendered without jurisdiction may of course be collaterally attacked. Kanne v. M. *161 & St. L. Ry. Co. 33 Minn. 419, 23 N.W. 854; Jewett v. Iowa Land Co. 64 Minn. 531, 67 N.W. 639; Duxbury v. Dahle, 78 Minn. 427, 81 N.W. 198; Riley v. Pearson, 120 Minn. 210, 139 N.W. 361, L.R.A. 1916D, 7; see, 3 Dunnell, Dig. & Supp. §§ 5139, 5141.[8] The same is true of statutory drainage proceedings. A person injured by such proceedings instigated without authority of law is not obliged to seek his remedy in the same proceeding by appeal or otherwise. See, Overmann v. City of St. Paul, 39 Minn. 120, 39 N.W. 66; 6 Dunnell, Dig. (3 ed.) § 3123.
7. However, respondent county contends that it is immune to a common-law action since it acts as a mere agency of the state in ditch proceedings. There is authority for the proposition that the state cannot be sued for damages by a landowner whose land is taken by the state without compensation. State, by Benson, v. Stanley, 188 Minn. 390, 247 N.W. 509. The same appears to be true of at least some involuntary agencies created by the state for governmental purposes. See, George v. University of Minnesota Athletic Assn. 107 Minn. 424, 120 N.W. 750; Lane v. Minnesota State Agr. Society, 62 Minn. 175, 64 N.W. 382, 29 L.R.A. 708. Counties and other involuntary governmental agencies have apparently shared this general immunity for negligent torts. Thompson v. County of Polk, 38 Minn. 130, 36 N.W. 267; Dosdall v. County of Olmsted, 30 Minn. 96, 14 N.W. 458.[9] The cases relied on by the county to establish its immunity involved causes of action in negligence. See, Nostdal v. County of Watonwan, 221 Minn. 376, 22 N.W. (2d) 461; Gaare v. Board of Co. Commrs. 90 Minn. *162 530, 97 N.W. 422; Defiel v. County of Clay, 169 Minn. 79, 210 N.W. 626.
However, a definite exception to this general immunity appears to be well established in this state in the case of positive, unauthorized invasions of private property. Lindstrom v. County of Ramsey, 136 Minn. 46, 161 N.W. 222; Newman v. County of St. Louis, 145 Minn. 129, 176 N.W. 191; Peters v. Town of Fergus Falls, 35 Minn. 549, 29 N.W. 586.[10] Since Storti v. Town of Fayal, 194 Minn. 628, 261 N.W. 463, this general immunity of quasi-municipal corporations has apparently been replaced by a limited immunity based on a distinction between "governmental" and "proprietary" functions. This has long been the test of immunity in the cases of cities and villages  the true municipal corporations. See, e.g., Keever v. City of Mankato, 113 Minn. 55, 129 N.W. 158, 775, 33 L.R.A. (N.S.) 339. However, whether the test of immunity be the character of the governmental unit, that is quasi-municipality as distinguished from the true municipality, or the character of the function involved, that is, governmental as distinguished from proprietary, the principle remains that no political subdivision of this state may take or damage private property without being subject to liability for the resulting damages. Peters v. Town of Fergus Falls, 35 Minn. 549, 29 N.W. 586; McClure v. City of Red Wing, 28 Minn. 186, 9 N.W. 767; Tate v. City of St. Paul, 56 Minn. 527, 58 N.W. 158; Lindstrom v. County of Ramsey, 136 Minn. 46, 161 N.W. 222; Bohrer v. Village of Inver Grove, 166 Minn. 336, 207 N.W. 721; Gunnerus v. Town of Spring Prairie, 91 Minn. 473, 98 *163 N.W. 340, 974; Kiefer v. County of Ramsey, 140 Minn. 143, 167 N.W. 362; Westerson v. State, 207 Minn. 412, 291 N.W. 900; Austin v. Village of Tonka Bay, 130 Minn. 359, 153 N.W. 738. The same is true in the case of nuisance created by such quasi-municipal corporations. Schussler v. Board of Commrs. 67 Minn. 412, 70 N.W. 6, 39 L.R.A. 75; Viebahn v. Board of Co. Commrs. 96 Minn. 276, 104 N.W. 1089, 3 L.R.A. (N.S.) 1126; Bohrer v. Village of Inver Grove, 166 Minn. 336, 207 N.W. 721; Dynes v. Town of Kilkenny, 153 Minn. 11, 189 N.W. 439.[11] This rule is by no means unique to this jurisdiction. As stated in 14 Am. Jur., Counties, § 53:
"The rule under which counties are absolved from tort liability in respect of the performance of duties imposed upon them by law in their capacity as instrumentalities of the state does not operate to preclude a recovery of damages from a county by one whose property has been taken or damaged in violation of his constitutional rights by the county in the construction of public improvements." (Italics supplied.) Board of Co. Commrs. v. Adler, 69 Colo. 290, 194 P. 621, 20 A.L.R. 512; Aldis v. Union Elev. R. Co. 203 Ill. 567, 68 N.E. 95; see, Annotation, 20 A.L.R. 516.
8. Compliance with M.S.A. 373.06 relative to claims against the county was not necessary in the case at bar. The word "claim," as used in that section, has been generally interpreted as referring to a charge based on statute or contract. See, 14 Am. Jur., Counties, § 65.[12] In any event it appears that plaintiff did file a claim with the county.
*164 9. The measure of damages in cases such as this is not what plaintiff would recover for nuisance or trespass at common law or under statutory provisions relating to nuisance but rather what he would be entitled to in a condemnation proceeding under the right of eminent domain. Board of Co. Commrs. v. Adler, supra; Aldis v. Union Elev. R. Co. supra. As previously indicated, it is clear that our statutory drainage proceedings involve the power of eminent domain. In re Town Ditch No. 1, 208 Minn. 566, 295 N.W. 47. However, the fact that plaintiff has sought the wrong measure of damages for the injuries to his property does not vitiate the cause of action stated in his complaint. 5 Dunnell, Dig. & Supp. § 7528a.
The order sustaining the county's demurrer is reversed.
10. As to respondent Hosfield, it appears from the complaint that he acted in two capacities in these proceedings. First, he was instructed to draw up necessary plans and specifications to make the ditch "function efficiently." Secondly, he supervised the actual ditch construction work. In neither capacity is he liable as a trespasser. Although the county may have been exceeding its authority in ordering the work, there is no allegation that Hosfield exceeded the authority given him by the county.[13] The instant situation is governed by Wallenberg v. City of Minneapolis, 111 Minn. 471, 477, 127 N.W. 422, 424, 856, wherein we said:
"* * * Such officers or employees should not be required to determine at their own risk the legality of the proceedings pursuant to which they performed the acts complained of."
Public officials and employees are not held personally liable for acts done honestly in the exercise of the discretion which the law gives them. Wilbrecht v. Babcock, 179 Minn. 263, 228 N.W. 916; see, Annotation, 90 A.L.R. 1482.
The order sustaining Hosfield's demurrer is affirmed.
*165 MR. JUSTICE NELSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.
NOTES
[1] Reported in 60 N.W. (2d) 32.
[2] M.S.A. 106.471, subd. 4(b); § 106.101, subds. 1, 2.
[3] See, M.S.A. 106.471, subd. 4(b); § 106.101, subds. 1, 2.
[4] See, M.S.A. 106.631.
[5] However, M.S.A. 106.471 was amended by L. 1953, c. 532, to make provision for an award of damages in a "repair" proceeding where resloping, leveling of banks, or removal of trees will require the taking of property not included in the original ditch establishment, but this amendment was approved April 21, 1953, considerably subsequent to the proceedings involved in this action.
[6] An alternative method is provided whereby, if the petition is signed by not less than 26 percent of the owners of the property affected by and assessed for the original construction of the ditch, certain steps are eliminated.
[7] The requirements of this section have been judicially expanded to include the petition. County of Martin v. Kampert, 129 Minn. 151, 151 N.W. 897.
[8] Cases relied on by the county to sustain its proposition that no collateral attack can be made on ditch proceedings involved attacks in which there was no question raised as to the jurisdiction of the board or other body to issue the order involved. See, Garrett v. Skorstad, 143 Minn. 256, 173 N.W. 406; Lupkes v. Town of Clifton, 157 Minn. 493, 196 N.W. 666.
[9] Towns and school districts are other examples of involuntary governmental units or quasi-municipal corporations and share this immunity. Altnow v. Town of Sibley, 30 Minn. 186, 14 N.W. 877; Bank v. Brainerd School Dist. 49 Minn. 106, 51 N.W. 814.
[10] This exception has been criticized as establishing the liability of the state itself since the county or other involuntary subdivision is merely acting as an agency of the state. See, 26 Minn. L. Rev. 326; O'Brien v. County of Rockingham, 80 N.H. 522, 120 A. 254. There is, at least, one example of the exception to the exception arising in the case of a drainage ditch where it was held that the county had no liability for damages caused by surplus water diverted by a county ditch. Defiel v. County of Clay, 169 Minn. 79, 210 N.W. 626; see, also, Bang v. Independent School Dist. No. 27, 177 Minn. 454, 225 N.W. 449; Allen v. Independent School Dist. No. 17, 173 Minn. 5, 216 N.W. 533.
[11] See, Minn. Const. art. 1, § 13:

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." As amended Nov. 3, 1896.
See, also, U.S. Const. Amend. V; Peterson, Governmental Responsibility for Torts in Minnesota, 26 Minn. L. Rev. 293, et seq.
[12] Compare the wording of this section with that of the section applying to towns, which calls for presentation of the "claim or cause of action." (Italics supplied.) M.S.A. 365.38.
[13] There was such an allegation in the cases relied on by plaintiff. See, Nelson v. Babcock, 188 Minn. 584, 248 N.W. 49, 90 A.L.R. 1472; Tholkes v. Decock, 125 Minn. 507, 147 N.W. 648, 52 L.R.A.(N.S.) 142.