## PHILLIP'S et al. v. BRANCH MINT MIN. & MILL CO. et al.

A nonresident mortgagee of mining property situated in the state who is served in a sister state with the summons and complaint in a suit to enforce miners' liens, and who fails to appear to answer the complaint alleging that plaintiff's liens are superior to the mortgage, is concluded by the judgment adjudging that the liens are superior.

Where, in a suit against a mining company and a codefendant to foreclose miners' liens, the codefendant served on the company a cross-complaint for judgment for his lien, the court acquired jurisdiction to determine the validity of codefendant's lien as against the company.

Under chancery practice, a cross-bill by one defendant against a codefendant must be served on codefendant to give the court jurisdiction to determine the controversy between defendants.

Cross-complaints, though not provided for by the Code, are proper under the old equity system which prevails in the state.

In the absence of any statutory provision, proceedings in cases of cross-complaints are governed by proceedings as defined in chancery.

The rule that a cross-complaint by defendant against a codefendant must be served on codefendant to give the court jurisdiction applies to proceedings to enforce miners' liens.

A defendant in an action to enforce miners' liens need not anticipate that any codefendant will set up by way of counterclaim or cross-bill some claim which deprives him of his property without notice that such a claim is made by codefendant, and he is given an opportunity to answer it.

Under Pol. Code, §§ 2577, 2578, relating to miners' liens, and providing that any person holding such a lien may proceed to obtain a judgment for the amount of his account thereon by civil action, in which all persons claiming liens shall be made parties, a defendant, in a suit to enforce miners' liens who files a cross-complaint to enforce a lien, but who fails to serve the same on a nonresident mortgagee who is a codefendant, cannot obtain a judgment adjudicating that his lien is superior to the lien of the morgtage, though the mortgagee not appearing was served with the summons and complaint.

Haney, J., dissenting.

(Opinion filed May 10, 1911.)

Appeal from Lawrence County Court.    Hon. W. G. RICE, Judge.

Action by Kirk G. Phillips and 'others against the Branch Mint Mining & Milling Company and others, in which James D. Hardin filed a cross-complaint.    From an order modifying a judgment of cross-complaint on the application of defendant, the Union Trust Company of Philadelphia, he appeals.    Affirmed.

*Martin & Mason,* for appellant.

One who agrees with another that he shall place buildings or other improvements upon certain property thereby authorize or knowingly permit the other to improve the property.    Henderson v. Connelly, 123 Ill. 98; Williams v. Vandervilt, 145 Ill. 238; Leiby v. Wilson, 40 Pa. St. 63; Boteler v. Espen, 99 Pa. St. 313; Lumber Co. v. Nelson, 71 Mo. App. 110; O'Leary v. Roe, 45 Mo. App. 567; Hall v. Parker, 94 Pa. St. 109; Barclay v. Wainwright, 86 Pa. St. 191; Burkitt v. Harper, 79 N. Y. 273; Hill v. Gill, 40 Minn. 441.    Under various statutory provisions, the owner's interest in the mine is not subject to a lien for work done or material furnished at the instance of a lessee, unless the owner is by agency or directly connected with the debt; but at most the lien is extended to the interest of the lessee or, as under some provisions, only to improvements.    27 Cyc., p. 774; Snyder, Mines, Sec. 1700-5; Griffin v. Hurley, 65 Pac. 147; Hopkins v. Hudson, 8 N.

E. 93. A lessee may by his contract subject his lease-hold interest to a mechanic's lien, but his contract cannot as a rule give rights to a lien against the leased property itself unless the lessor authorized or consented to the making of the improvements or repairs. 27 Cyc. 56; Phillips, Mechanics' Liens, Secs. 6583-4-5-8-9; Williams v. Vanderbilt, 21 L. R. A. 489. Our statute requiring notice of the pendency of an action affecting the title to real property provides "but if the action be for the foreclosure of a mortgage or the enforcement of a mechanic's or miner's lien, no such notice need be filed." Rev. C. C. P., Sec. 108. Where the lis pendens statute has no negative words or repealing clause, it is regarded as supplemental to the common law and not as repealing it, so that the common law will govern in all cases not covered by the statute. Where a statute does not require a notice to be filed, the common law rule of notice arising from the commencement of the action itself prevails. 25 Cyc., p. 1452-3; Brown v. Cohn, 95 Wis. 90, 69 N. W. An amendment to the bill or complaint, after a purchase or the acquisition of other rights *pendente lite,* which does not alter the cause of action, does not affect the lis pendens, since it relates back to the filing of the original bill. Norris v. Ile, 152 Ill. 190; Myers v. Jones, 61 Kan. 191; Arnold v. Arnold, 17 S. W. 203; Turner v. Houpt, 53 N. J. Eq. 526; Pendery v. Allen, 53 Ohio St. 251; Cotton v. Dacy, 61 Fed. 481; Burt v. Gamble, 98 Mich. 102, 57 N. W. Rep. 261.

*Frederick H. Stillwagen, Laughlin & Ogden* and *Porter, Foulkrod & McCullagh,* for respondent.

If a lessor authorizes the construction of improvements upon land belonging to him he makes the lessee his agent for the purpose of making such improvements if such improvements become his at the termination of the lease. Carey, Lombard Lbr. Co. v. Jones, 187 Ill. 203; Henderson v. Connelly, 123 Ill. 98; Williams v. Vandervilt, 145 Ill. 238; Leiby v. Wilson, 40 Pa. St. 63; Boteler v. Espen, 99 Pa. St. 313; Lumber Co. v. Nelson, 71 Mo. App. 110; O'Leary v. Roe, 45 Mo. App. 567; Hall v. Parker, 94 Pa. St. 109; Barclay v. Wainwright, 86 Pa. St. 191; Burkitt v. Harper, 79 N. Y. 273; Hill v. Gill, 40 Minn. 441, 42 N. W. 294.

The foregoing is the rule, even under statutes without the provision in our act of 1895, "or with one whom such owner has authorized or knowing permitted to improve." Schmalz v. Mead, 125 N. Y. 188, 26 N. E. 251; Miller v. Mead, 127 N. Y. 544; Burkitt v. Harper, 79 N. Y. 273; McCue v. Whitewell, 156 Mass. 205; Reliable P. & H. Co. v. Dallibach, 145 Ill. App. 473; Henry v. Miller, 145 Ill. App. 628; Whitcomb v. Gans, 119 S. W. 676; Webster City Radiator Co. v. Ahr, 103 N. Y. S. 195. An amendment of the declaration or complaint, after default, if it introduces a new cause of action, or if it otherwise goes to the substance of the pleading, opens the default and admits the defendant to all the rights which he would have had on filing or service of the original declaration or complaint. 23 Cyc. 741; Concannon v. Smith, 134 Cal. 14; Witter v. Bachman, 117 Cal. 318; La Barre v. Waterbury, 69 Conn. 554; Brooks v. Collier, 58 S. W. 559; Barber v. Briscoe, 19 Pac. 589; Cross v. Stevens, 45 Kas. 443, 25 Pac. 880.

CORSON, J. On May 12, 1908, the plaintiffs instituted an action to foreclose a mechanic's lien making James D. Hardin and the Union Trust Company of Philadelphia, among others, defendants in the action. The complaint was in the usual form, and in the complaint it is alleged: "That the defendant Chicago, Burlington & Quincy Railroad Company, James D. Hardin, and the Union Trust Company of the City of Philadelphia claimed some estate, right, title, and interest in and to the above-described property, the exact nature of which is unknown to plaintiffs, but plaintiffs allege that said claim is inferior and subject to the claim of said plaintiffs." The plaintiffs then prayed for judgment against the mining company for the amount of their respective accounts; that all parties having miners' liens against said above-described property might be brought in and made defendants or plaintiffs herein, as the case may require; that the said claims of the defendants Chicago, Burlington & Quincy Railroad Company, James D. Hardin, and the Union Trust Company of the city of Philadelphia may be adjudged inferior and subject to the liens and claims of the plaintiffs; and that said plaintiffs may be adjudged to have a

miner's lien, etc., upon the properities described in the complaint. To the complaint defendant Hardin served and filed a separate answer, denying the larger portion of the account of Cordelia O'Donnell, and for further defense, and by way of counterclaim and for affirmative relief, the defendant alleges: That at the special instance of the Branch Mint Mining & Milling Company he sold and delivered to said defendant during the months of from the 15th day of February, 1903, to and including the 15th day of February, 1908, certain material, lumber, machinery, tools, and supplies, and performed for said defendant, at its instance and request, certain work and labor which were of the value and for which said defendant company agreed to pay the sum of $150,-000, no part of which has been paid. He then alleges the filing of a lien for said account on July 28, 1908; that the defendant railroad company and the Union Trust Company claim some right, title, and interest in and to said property which claim defendant alleges is inferior and subject to his lien, and prays for judgment against the mining company for the amount of his account with interest, together with the further relief that his lien be foreclosed and the property sold in the manner provided by law. This answer was verified in July, 1908, was served on the plaintiffs on July 8, 1908, and on the defendant the Branch Mint Mining & Milling Company. Subsequently, by leave of court, defendant Hardin served his separate supplemental answer alleging: "(1) 'For a further defense to the complaint of the plaintiffs and by way of counterclaim, and for affirmative relief,' the defendant, after alleging the corporate character of the remaining defendants, alleged that between March 1, 1904, and July 24, 1908, he furnished the defendant mining company certain lumber, machinery, materials, tools, and supplies of the value and for which said defendant agreed to pay the aggregate sum of $392,961.61. * * * He then alleged the filing of a lien for said account on July 28, 1908, and that the defendants Chicago, Burlington & Quincy Railroad Company and the Union Trust Company claim some estate, right, title, and interest in and to said property, which claim defendant alleged was inferior and subject to the lien of said defendant. The prayer was for judgment in his favor against the

mining company for the amount of his account, with interest, together with the further relief prayed for in his separate answer heretofore made herein." The supplemental answer was served upon the attorneys for the plaintiffs, and attorneys for the Branch Mint Mining & Milling Company on August 10, 1908, and was served upon the Sterns Company, which had intervened, setting up a miner's lien in its behalf against the Branch Mint Mining & Milling Company on August 20, 1908. The Branch Mint Mining & Milling Company served its answer to this separate supplemental answer of the defendant James D. Hardin, making certain admissions and denials, not material in the determination of this case. Certain other parties intervened setting up by way of complaints in intervention the furnishing of materials, supplies, etc., to the defendant mining company, the filing of their liens therefor, and prayed for the same relief as prayed for by plaintiffs and defendant Hardin. The following stipulation was entered into: "The defendant Hardin stipulated, under date of August 15, 1908, with the plaintiffs and the interveners, that the amount of any liens adjudged due to them from the defendant mining company should be decreed to be prior and superior liens to that claimed by the defendant Hardin, and that decree of foreclosure might be entered accordingly." These liens of the plaintiffs and interveners amount to the sum of $7,149.27. The original complaint in the action was served upon the defendant Union Trust Company, in the city of Philadelphia, state of Pensylvania, but that company did not appear in the action or file or serve any answer or demurrer therein.

On May 1, 1909, the court entered a decree in favor of the plaintiffs and interveners, establishing their liens and decreeing that said liens were concurrent, and further decreeing that the liens of the above-named parties were prior and superior to the lien, if any, of James D. Hardin and the Union Trust Company of the city of Philadelphia; further ordering a decree that the action be continued so far as the claim of James D. Hardin was concerned; further ordering a decree that the property described in the complaint be sold at public auction, and out of the proceeds of such sale the sheriff pay the plaintiffs, interveners, and the railroad company the amount found due them, and that, if there be

any balance left, the same shall be paid into the hands of the clerk of the court to wait the decree of the court in the matter of the lien of James D. Hardin and the claim of the Union Trust Company, if any, with the usual provisions customary in foreclosure decrees. On July 9, 1909, the cause coming on for trial on the issue raised by the supplemental answer and counterclaim of the defendant James D. Hardin, and the answer of the Branch Mint Mining & Milling Company thereto, it was by the court adjudged that the defendant James D. Hardin have and recover of the Branch Mint Mining & Milling Company the sum of $392,961.61, with interest thereon from August 1, 1908, and that execution issue therefor. On July 24, 1909, an order to show cause was served upon John R. Russel, attorney of record for the Branch Mint Mining & Milling Company, and upon one of the directors of said company, returnable July 27, 1909, why the decision and judgment hertofore entered in favor of the said James D. Hardin should not be vacated and set aside and a judgment entered establishing and sustaining the miner's lien filed by the said Hardin against the defendant mining company. On the return day of this order to show cause, the court ordered that the decision and judgment on or about July 9, 1909, be, and the same are, vacated and set aside, and it was further ordered that, in lieu thereof, a decision and judgment to be forthwith entered therein establishing and sustaining the miner's lien filed by the defendant Hardin against the Branch Mint Mining & Milling Company as to all items therein contained, excepting items of interest paid on mortgage bonds, and awarding execution upon said judgment. In accordance with this order, amended findings of fact and conclusions of law were signed and entered, finding in favor of the defendant Hardin as to his lien and amount thereof, and that the liens of the plaintiffs herein are prior to the claim and lien of the defendant James D. Hardin, "but that the lien of the Union Trust Company of the city of Philadelphia is inferior and subject to the lien of the defendant James D. Hardin."

Then follows the usual judgment foreclosing a miner's lien in favor of the defendant Hardin for $378,867.32 upon the prop-

erty described in the complaint and supplemental answer, decreeing a sale of said properties, and further adjudging and decreeing "that the defendant the Union Trust Company of the city of Philadelphia, a corporation, and the defendant Branch Mint Mining & Milling Company, a corporation, and all persons claiming or to claim under them or either of them, and all persons having liens or interests in said property or any part thereof subsequent to the said miner's lien of the defendant Hardin, and those claiming under them, be, and the same are, hereby forever barred and foreclosed of and to any equity of redemption and claim in or to the above-described premises, and every part and parcel thereof; further ordering and decreeing that the interest, liens, and claims of the defendants the Branch Mint Mining & Milling Company and the Union Trust Company of the city of Philadelphia are inferior and subject to the said lien of the defendant Hardin." And it was further ordered and adjudged that the said James D. Hardin recover of the defendant Branch Mint Mining & Milling Company the balance of his claim, amounting to $38,800, and that execution issue therefor. On February 4, 1910, the defendant Union Trust Company, appearing specially for the purpose of said motion only, moved the court for an order modifying and changing the decision entered on the cross-complaint of James D. Hardin on the 28th of July, 1909, in the following particulars: "By striking out from paragraph 5 the following words: 'But that the lien of the Union Trust Company of the city of Philadelphia, a corporation, is inferior and subject to the lien of the defendant James D. Hardin herein'; and also by striking out in said decision the words: 'The court concludes that the defendant James D. Hardin is entitled to a lien against the Branch Mint Mining & Milling Company superior in right to the lien of the denfendant the Union Trust Company of the city of Philadelphia.' And also by striking out from the decree entered therein on the 29th day of July, 1909, * * * all reference to the Union Trust Company of the city of Philadelphia and the priority of the lien of James D. Hardin over the lien of said Union Trust Company upon the folowing grounds, to-wit: (1) That the court had no jurisdiction of the defendant Union Trust Company to make any decision or make or enter any

decree against it except the decree first entered here in the above-entitled action in favor of the plaintiff and intervening plaintiffs. (2) That the court had no jurisdiction over the defendant Union Trust Company of the city of Philadelphia, to enter any degree whatever on the cross-complaint of the defendant James D. Hardin, for the reason that said cross-complaint had never been served upon the Union Trust Company of the city of Philadelphia either within or. without the state of South Dakota, and the court was absolutely without jurisdiction to make any decree in reference to the lien of the Union Trust Company of the city of Philadelphia. (3) The court was entirely without jurisdiction to make any decree upon the cross-complaint of the defendant James D. Hardin and against the defendant Union Trust Company of Philadelphia, for the reason that no process whatever had ever been served either within or without the state of South Dakota upon said defendant Union Trust Company of the city of Philadelphia. (4) The court was without any jurisdiction whatever to enter a decree upon said cross-complaint in favor of the defendant James D. Hardin and against the defendant Union Trust Company of the city of Philadelphia, for the reason that the court had on or about the 10th day of July, 1909, filed a decision and judgment in favor of the defendant James D. Hardin and against the Branch Mint Mining & Milling Company for money only; and thereafter, on or about the 23d day of July, 1909, the court issued an order to show cause which was served on the Branch Mint Mining & Milling Company only, why the decision and judgment of July 10, 1909, should not be vacated and set aside, and why there should not be entered in lieu thereof a decision and judgment establishing and sustaining the miner's lien filed by James D. Hardin against the defendant Branch Mint Mining & Milling Company and foreclosing the same; that said order to show cause was not served upon the Union Trust Company of the city of Philadelphia either within or without the state of South Dakota, and that no attempt was made in any wise to obtain jurisdiction over said Union Trust Company of Philadelphia, and the court was without any jurisdiction whatever to vacate said money judgment entered on the 10th day of July, 1909, or to bind by any decree in any way the

defendant Union Trust Company of the city of Philadelphia. This motion will be based upon all of the papers and proceedings in the case."

It was admitted that the only paper served on the Union Trust Company of Philadelphia in this action was, the original summons and complaint, and that the counterclaim of James D. Hardin was never served upon the Union Trust Company of Philadelphia. The defendant Hardin, in opposition to said motion, submitted an affidavit of his attorney that "there was no adjournment of the Eighth judicial circuit court in and for Lawrence county, South Dakota, between July 9, 1909, and July 30, 1909," that both of the judgments hereinbefore referred to were rendered at the same term by the said court. On February 10th the motion of the defendant Union Trust Company was heard, and it was ordered that the decision and decree be modified and changed as requested. From this order the defendant James D. Hardin has taken an appeal to this court, and assigns as error that the court erred in holding that it was without jurisdiction over the Union Trust Company to determine the status or priority of its mortgage with reference to the miner's lien of the defendant Hardin, and in striking out the paragraphs hertofore referred to.

The only question presented, therefore, for decision in this case, is: Was the trust company concluded by the decree of the court entered foreclosing Hardin's lien as against the property, and did the court err in striking from the Hardin decree the paragraphs hereinbefore set forth, adjudging that Hardin's lien was prior and superior to the mortgage upon the mining property of the Branch Mint Mining & Milling Company? It will be observed that the action was instituted by the plaintiffs Phillips and Cordelia A. O'Donnell to enforce miners' liens against the property of the Branch Mint Mining & Milling Company; that the only paper served upon the Union Trust Company was the original summons and complaint in the state of Pennsylvania, and that said company never appeared in the action; that the mining company and Hardin stipulated that it should be decreed that the liens of the plaintiffs and interveners were prior and superior to the lien

claimed by the defendant Hardin; and that decree of foreclosure might be entered accordingly.

[1] The summons and complaint having been served upon the defendant Union Trust Company, and it being alleged in the complaint that the plaintiffs' liens were superior to the mortgage of the Union Trust Company, and that company having failed to appear in the action, it, in effect, admitted the allegation of the complaint as to the superiority of the liens of the plaintiffs, and was therefore, concluded by the plaintiffs' judgment. Southard v. Smith, 8 S. D. 230, 66 N. W. 316. The plaintiffs' decree, therefore, being legal and valid and not being questioned by either party, need not be further referred to in this opinion. As we have seen, the defendant Hardin sought by his counterclaim, or more properly, perhaps, cross-bill, to obtain a judgment foreclosing his lien, not only as against defendant mining company, but also as against the Union Trust Company.

[2] The counterclaim of Hardin or cross-bill was served upon the mining company, and the court thereby acquired jurisdiction to determine the validity of Hardin's lien as against the mining company, and it seems to be conceded that Hardin's decree, so far as it affected the mining company, was binding and conclusive upon that company. It is contended by the appellant that, as the summons and complaint were properly served outside of the state upon the Union Trust Company at the commencement of the action, the court thereby acquired jurisdiction to determine the relative priority of the liens of the defendant Hardin and the defendant Union Trust Company as between them as well as between them and the plaintiffs, both because of the express terms of the statute and because of the very object and essential nature of the action itself. By section 2577 of the Political Code, then in force, it was provided that any person entitled to a lien under the article should make and file his claim with a description of the property, and concludes as follows: "Provided, that all lien claims for labor performed or materials furnished shall be concurrent liens upon the property charged, and shall be paid pro rata out of the proceeds arising from the sales thereof, if the same

shall be sold or upon settlement without sale;". and by section 2578 it is provided that any person holding such lien may proceed to obtain a judgment for the amount of his account thereon by civil action, and concludes as follows: "And in all actions instituted under this article, all persons claiming liens upon the property charged shall be made parties to such action or proceeding, and the rights of all parties therein shall be determined by the court, and such order made in regard thereto as shall preserve and protect the rights of all such parties under the provisions of this article."

It is contended by the appellant that, while the liens referred to in section 2577 only include miners' liens, by the terms of section 2578 the liens therein referred to include, not only miners' liens, but any other liens that the parties may have upon the property. It is contended, however, by the respondent that the liens referred to in section 2578 only include miners' lines, and do not include the lien of the Union Trust Company under its mortgage or deed of trust.

It is urged by the appellant that the Legislature has defined the term "lien," and that, therefore, the term as used in the sections referred to is controlled by the definition thus given. There is much force in this contention. But, while it is true the Legislature has defined the term "lien' by section 2017 of the Rev. Civ. Code as "a charge imposed upon specific property, by which it is made security for the performance of an act," the sections of the Political Code quoted from, in which the Legislature was dealing with the subject of miners' liens exclusively, the term "lien" as therein used, it would seem, was intended only to apply to a miner's lien in both sections, for the law prescribing such procedure provides that all miners' liens shall stand upon equal footing and it will be noticed that by section 2578 "any person holding such lien may proceed to obtain a judgment, * * * and when any suit or suits shall be commenced thereon such lien shall continue until said suit or suits shall be finally determined and satisfied." But, assuming for the purposes of this decision, without deciding as to whether or not the term "lien' as used in section 2578 refers to a miner's lien only, the counterclaim or cross-bill of Hardin would

only affect the Union Trust Company when served upon it, as it seems to be a general rule that "if the defendant relies on the equities of his case for anything beyond a defense, and seeks affirmative relief, he must file a cross-bill. An answer will not be sufficient." 5 Ency. Pl. & Pr. 632, and cases cited. And, "in the absence of statute providing otherwise, service of process on the defendants to a cross-bill, though parties to the original bill, and in court for all the purposes thereof, is necessary to bring them into court on cross-bill. Their appearance must be enforced in the same manner as defendants to the original bill, unless they voluntarily enter their appearance." 5 Ency. Pl. & Pr. 658, and cases cited. On page 683 of the same volume it is said: "Many of the statutes which authorize the filing of a cross-complaint expressly provide for the service of proceess upon the defendants to the cross-complaint. * * * These statutes, however, are merely declaratory of the equity rule relating to process on cross-bill, and service of process is necessary even in the absence of express statutory provision requiring it. But, of course, if the defendants voluntarily appear, no process is necessary." In 23 Cyc. 803, the rule is thus stated: "At common law one defendant to a suit cannot recover a judgment against a codefendant, at least without a cross-pleading and service of process or an appearance to the cross-pleading by defendant thereto." In Washington Railroad v. Bradleys, 10 Wall. 299, 19 L. Ed. 894, the Supreme Court of the United States, in discussing a similar question, says: "Parties defendant are as necessary to cross-bills as to original bills, and their appearance in both cases is enforced by process in the same manner. Without the aid of a cross-bill, the court could not have decreed the sale of the property covered by the trust deed. It could only have dismissed the bills of the complainants and have denied the relief sought."

[3, 4] It seems to be well settled that a cross-bill by one defendant in an action as against a codefendant must be served upon such codefendant in order to give the court jurisdiction to determine the controversy between such defendants. It is elementary in our system of government that no person can be deprived

of his property without an opportunity of being heard, and defend ing the same. While our Code has not provided for cross-complaints, the same are presumably proper under the old equity system of practice, which prevails in this state; no other system having been provided by the Code. In California cross-bills are provided for by their Code, and the manner of service of the same is clearly pointed out, but these sections of the California Code have, for some reason, been omitted in our Code of Civil Procedure.

[5 6]) In the absence, therefore, of some special provision defining specifically the proceedings to be had in cases of cross-bills, we must be governed by the proceedings as defined in chancery, and that in all cases, in order to give the court jurisdiction over the subject-matter, requires that the cross-complaint shall be served upon the opposing party, and we think this rule is applicable to proceedings to enforce mechanics' and miners' liens. Parties claiming such liens are required to present their claims to the court, and they necessarily, therefore, come in as interveners,. or, if made parties, by way of answer.

[7] The defendant in an action in the first instance is only required to answer the complaint of the plaintiff, if made a party to the action. If not made a party, he may become such by filing his complaint in intervention, but he is not required to anticipate that some defendant in the action will set up by way of counterclaim or cross-bill some claim which deprives him of his property without notice that such a claim is made by his codefendant, and he is given an opportunity to answer such claim and make a defense thereto for the purpose of protecting his rights in the premises..

[8] It is quite clear, therefore, that the Union Trust Company was not bound by the action of the court in adjudging Hardin's lien to be prior and superior to the mortgage held by that company, in the absence of proof that the answer or cross-bill was served upon that company that it might have an opportunity to defend against the claim so made. The Union Trust Company might be, and probably was, willing that the small amount claimed by the plaintiffs should be adjudged to be superior and paramount to the claims of the Union Trust Company, but it does not follow

that that company was willing that Hardin should come in with a claim of over $378,000, and allow that claim to be adjudged by the court, superior and prior to the rights of the defendant's lien, as mortgagee or trustee. The learned counsel for the appellant have made a very ingenious argument in favor of the decree of Hardin as against the Union Trust Company, but in our opinion their contention cannot be sustained under the authorities, and the court, in the absence of the service of Hardin's counterclaim or cross-bill in the action was without jurisdiction to make any decree affecting the lien or claim of the Union Trust Company.

In Smith v. Woolfolk, 115 U. S. 143, 5 Sup. Ct. 1177, the learned Supreme Court of the United States in its opinion says: "It is settled that one defendant cannot have a decree against a codefendant without a cross-bill, with proper prayer, and process or answer, as in an original suit. Walker v. Byers, 14 Ark, 246; Gantt's Dig. § 4559; Cullum v. Erwin, 4 Ala. 452; Cummings v. Gill, 6 Ala. 562; Shelby v. Smith, 2 A. K. Marsh. (Ky.) 504. It follows from the reason of this rule that if one complainant can, under any circumstances, have a decree against another upon a supplemental or amended bill, it must be upon notice to the latter. After a decree disposing of the issues and in accordance with the prayer of a bill has been made, it is not competent for one of the parties, without a service of new process or appearance, to institute further proceedings on new issues and for new objects, although connected with the subject-matter of the original litigation, by merely giving the new proceedings the title of the original cause. If his bill begins a new litigation, the parties against whom he seeks relief are entitled to notice thereof, and without it they will not be bound; for the decree of a court rendered against a party who has not been heard, and has had no chance to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other court. Windsor v. McVeigh, 93 U. S. 274; Galpin v. Page, 18 Wall. 350; Jewell v. Iowa Land Co., 64 Minn. 531, 67 N. W. 639; White v. Patton, 87 Cal. 151. 25 Pac. 270.

In the case of White v. Patton, supra, a question very analogous to the one at bar was determined by the Supreme Court in

California.   In that case a junior mortgagee, made defendant, sought by cross-complaint to foreclose his own mortgage as against the mortgagor who was made a defendant, and the court in its opinion says: "By the service of the summons issued upon the complaint of plaintiff, the court acquired jurisdiction of the parties, and control of all the subsequent proceedings.   Code Civ. Proc. § 416.   But what is meant by those words, 'all the subsequent proceedings?'   Manifestly it means proceedings upon that complaint, and for that cause of action.   It had jurisdiction to hear and determine the rights of all the parties as to the questions involved in the cause of action stated in that complaint.   It could ascertain and determine the amount due to plaintiff, and enter a decree foreclosing his mortgage, as against the claims of all the defendants; or if it had found the mortgage of defendant Thomson to be a prior mortgage, instead of a subsequent one, it could have granted him proper relief as against the plaintiff, provided the plaintiff had been properly served with the cross-complaint.   But quoad the plaintiff's cause of action, defendants Patton, the mortgagors, who alone were personally liable in the action, had a perfect right to make default, and let the plaintiff have the relief he prayed against them without contest.   It did not follow that their default upon the plaintiff's summons would give the court jurisdiction to enter another, further and different judgment against them, in favor of another and different party, upon another and different cause of action, and of which they were in no manner put upon notice, against which they had no 'day in court.'   Such a proceeding, even if authorized by statute, would be in direct violation of a right guaranteed by the Constitution, and one depriving the parties of their property 'without due process of law.'   But such a proceeding is not authorized by the statute.   Thomson was a proper party defendant.   He might have made default, like his codefendants, and like the defendant Marks, who was also sued as a junior mortgagee, allowed his right to be foreclosed at the same time that the right of the mortgagors was; but he elected to come in.   In coming in he might have set up his mortgage by way of showing his right, and then contented himself with contesting simply the right, or the priority of the right, of plaintiff.   But he

attempted to go further, and seek to foreclose, in the same action, and against, not the plaintiff, but all his codefendants, his mort-gage, and to secure a deficiency judgment against the defendants Patton. This, too, the statute gives him the right to do, but not without giving notice to the persons against whom he sought af-firmative relief. Even if those persons had been present in court, actively contesting the claim of plaintiff, they would have been en-titled to actual and full notice of the claim set up by defendant Thomson, and of the affirmative relief which he demanded, and to an opportunity to defend against it. They were entitled to service of the cross-complaint, and to demur or answer thereto."

In the case of Corcoran v. Canal Co., 94 U. S. 741, cited by appellant, the Supreme Court of the United States in its opinion is careful to say "that adverse interests as between codefendants may be passed upon and decided; and, if the parties have had a hearing and an opportunity of ascertaining their rights, they are concluded by the decree as far as it affects rights presented to the court and passed upon by its decree." Of course, that part of the opinion is very material, "and, if the parties have had a hearing and an opportunity of ascertaining their rights, they are concluded by the decree," etc.

Appellant seems to rely on the case of Stearns v. Wright, decided by this court and reported in 13 S. D. 544, 83 N. W. 587, but that case does not sustain the appellant's position. The de-fendant the German American Loan & Trust Company by cross-complaint sought and were granted relief against the defendants Wright. In another action it was claimed that the decree award-ing relief to the German American Loan & Trust Company was void because the answer was not served on the defendants Wright This court held, however, that it did not affirmatively appear that the Wrights were not served with a cross-complaint, and, it being a collateral proceeding, the court was required to hold in support of the judgment of the court below that it would be presumed that the cross-bill had been properly served. Had a motion been properly made in the original action, and it had affirmatively ap-peared that the Wrights were not served with the cross-complaint,

the motion would probably have been granted. But in Mfg. Co. v. Mattice, 10 S. D. 253, 72 N. W. 891, this court held that, as against a collateral attack, every fact essential to the authority of a court of general jurisdiction to render such judgment is presumed, including the fact of service within proper limits as to place, and that rule was followed in the Wright Case. Matson v. Swenson, 5 S. D. 191, 58 N. W. 570; Black, Judgm. § 271; Freem. Judgm. (4th Ed.) § 132, and cases there cited.

In the case at bar, however, it is conceded that the cross-bill of Hardin was not served upon the defendant the Union Trust Company; hence the question of presumption does not arise in this case. It is difficult, therefore, to see upon what theory the Union Trust Company could be bound by an answer or cross-complaint filed by Hardin in the suit by plaintiff against himself and others, when the Union Trust Company had had no opportunity to defend against the claim of Hardin and had no notice, so far as the record discloses, that he was attempting to obtain a judgment against it, which would practically cut off its claim as trustee for an amount of over $144,000, without notice and without an opportunity to defend against such claim; Hardin's judgment being for an amount of over $378,000 which was adjudged to be a prior and superior lien to the lien of defendant, and which would necessarily have the effect to render the security held by the trust company comparatively valueless.

We are of the opinion, therefore, that the circuit court was clearly right in striking out of Harlin's judgment or decree those provisions of the same that sought to establish the priority of Hardin's judgment as against said company.

Finding no error in the record, the judgment of the court below and order appealed from are affirmed.

WHITING, J. (concurring specially). While concurring in the result reached by my colleague as announced in the foregoing opinion, I base my concurrence solely upon the grounds that the word "lien," as used in section 2578 of the Revised Political Code, refers solely to miners' liens, and that we must look to other authority for the right to join mortgagees or trustees in an action of

this kind. This case then stands,.so far as respondent is concerned, as if it had been an action brought to foreclose a mortgage, and in which respondent, who claimed to hold a second mortgage, was made defendant together with the owner of the property. If respondent failed to apear, the owner of the property could not claim that the court had jurisdiction over respondent authorizing it to adjudicate the rights of respondent under respondent's mortgage, basing such claim of jurisdiction upon the fact that respondent was named as a defendant in the original summons and complaint. I express no opinion as to the effect of section 2578 upon the jurisdiction of the court to determine adverse claims among various miner's lien claimants without cross-complaints and service thereof.

HANEY, J. (dissenting). In this state a mortgage is embraced by the statutory definition of the word "lien." Rev. Civ. Code, §§ 2017, 2021, 2022. The statute relating to miner's liens provides that, when a suit is commenced to enforce such a lien, "all persons claiming liens upon the property charged shall be made parties to such action or proceeding and the rights of all parties therein shall be determined by the court." Rev. Pol Code, § 2578. The word "liens" should be given its statutory meaning. Nothing in the context justifies any other conclusion. On the contrary, the declaration, "and the rights of all parties therein (in the property charged) shall be determined by the court," plainly indicates the intention to have liens of every description considered. Without considering all charges upon the property, the rights of none therein can be properly determined. The operation of the statute cannot be restricted to miners' liens without interpolating "miners" before the word "liens" or "provided for in this act" after such word. So I conclude that, when an action is commenced to enforce a miner's lien, all persons having liens of any description upon the property charged are proper if not necessary parties.

Our Code of Civil Procedure "establishes the law of this state respecting the subjects to which it relates." Rev. Code Civ. Proc. § 3. In all cases provided for therein, all statutes, laws, and

rules in force in this state before its adoption, whether consistent
or not with its provisions, unless expressly continued in force by
it, were repealed and abrogated. Id. § 9. It provides a complete
and exhaustive system of pleading and practice; that civil actions
in the circuit court shall be commenced by the service of a sum-
mons; what the summons, complaint, and answer shall contain;
when and upon whom answers shall be served; and what notices
shall be served during the pendency of an action. It does not re-
quire that any answer shall contain a prayer or demand for relief;
nor does it require the service of any answer upon codefendants.
"Cross-bills" and "cross-complaints" are wholly foreign to our
system of procedure. In the case at bar respondent received all
the notice required by the statutes of this state, and, unless such
statutes are unconstitutional, the court below did not exceed its
jurisdiction in entering the judgment which this court now con-
cludes was absolutely void so far as it affected respondent's rights.
I cannot concur in this conclusion. I believe the rules of pro-
cedure in civil causes prescribed by the statutes of this state, when
correctly interpreted and properly applied, will afford "due pro-
cess of law" in every case without the aid of rules of practice
which have been abrogated by the Legislature. Of course, no
one can lawfully be deprived of property or bound by the adjudica-
tion of any tribunal without notice. But what shall constitute
notice in any given case is another and different proposition.
I know of no fundamental rule or principle which requires that
a defendant upon whom the summons in a civil action has been
personally served, and who does not appear, shall receive formal
notice of every subsequent step taken in the proceeding. "Due
process of law" does not require that all separate answers shall be
served upon codefendants. Of what, then, should a defendant who
has been served with original process and who has not appeared
be given formal notice? Manifestly only of such matters as are
not contemplated by the original process. Evidently recognizing
this principle, the Legislature of this state has required that a
complaint in intervention which necessarily injects into the litiga-

tion matters not embraced or disclosed by the original process shall be served upon all parties who have not appeared and upon the attorneys of all parties who have appeared. Rev. Code Civ. Proc. § 96. In the present case, the complaint, as well as the summons, was served upon the respondent. If it had not been served, respondent, having been served with the summons, was bound to take notice of what the complaint contained. It was alleged therein that the appellant claimed some right, title, or interest in the described property. It prayed that all parties having miners' liens against the property might be brought in and made defendants or plaintiffs as the case might require; that all miners' liens might be adjudged to be concurrent liens, that the property might be sold to satisfy said miners' liens, and that the proceeds of the sale might be distributed, first, to the expenses of the sale, second, to the payment of all miners' liens filed against the property; third, to the payment of subsequent liens; and, fourth, that the surplus be paid to the defendant Branch Mint Company. The respondent, therefore, had notice, not only of the nature and objects of the action, but also that appellant had a claim against the property. It was bound to know that under the laws of the forum appellant might answer asserting whatever claim he had and have his rights determined without serving his answer upon his codefendants, and that, in the absence of any appearance on its part, it was entitled to no further notice of proceedings in the action prior to judgment. Appellant was named as a party defendant. Respondent was notified that the purpose of the action was to determine the rights of all parties in and to the described property, and, unless "due process of law" demanded the service of a detailed statement of the rules of procedure in this state, the notice received by respondent was amply sufficient to authorize an adjudication of its rights. The substantial difference between a case where one defendant is granted relief affecting another upon grounds independent of plaintiff's cause of action, and one where the character of such defendant's claim is disclosed by the plaintiff's complaint, was, I think, clearly and correctly stated by the Supreme Court of Indiana in Bevier v. Kahn, 111 Ind. 200, 12 N.

E. 169. In its decision that court said: "In the case before use the complaint showed that the two notes were secured by the same mortgage; that they had been transferred to different parties; that there was a question as to the priority; that the parties were brought into court to settle all such questions; and this was enough to fairly and reasonably apprise the appellants that they were called into a case which could not be determined without the filing of a cross-complaint. It was therefore their duty to take notice, without further process, of all the proceedings in the cause." So in the case at bar the complaint showed that appellant claimed an interest in the property described therein, that he and respondent were brought into court to settle all questions relating to their respective rights therein; and this was enough to fairly and reasonably apprise the respondent that it was called into a case in which appellant might answer without service of further process upon his codefendants, and in which all questions relating to the priority of liens as between all parties to the suit might and would be adjudicated.

Having received such notice, I think respondent was bound by the judgment of the circuit court that its application to have such judgment modified, based as it was alone on the ground of want of jurisdiction, should have been denied, and that the order appealed from should be reversed.