## McCUTCHEN v. UNION TRUST CO. OF PHILADELPHIA et al.

## HARDIN v. UNION TRUST CO. OF PHILADELPHIA.

(Circuit Court of Appeals, Eighth Circuit. January 12, 1921. Rehearing Denied. May 4, 1921.)

Nos. 5406, 5481.

Mortgages &#x25CB;&#x2013;529 (3)—Erroneous sale under decree held properly set aside.

In a suit in a federal court for foreclosure of a mortgage on mining property, after decree, a sale was ordered without redemption, and the property was bought in by one acting in the interests of the mortgagee for the amount of receivers' certificates and other liens, which were prior to the mortgage. Later, in a suit in the state courts to which the mortgagee was not a party, the Supreme Court of the state held that under the state statutes the sale was subject to redemption by the owner of the mortgagor's interest, whereupon the purchaser and the mortgagee

&#x25CB;&#x2013;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

filed petitions for relief in the federal court, which were in effect supplemented bills. *Held* that, in order to do equity to all parties in interest, the sale should be set aside, and all parties restored to their rights and priorities as they stood before it was made.

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Suit in equity by the Union Trust Company of Philadelphia against the Branch Mint Mining & Milling Company and others. Charles W. McCutchen and James D. Hardin appeal from an order confirming a foreclosure sale. Affirmed, on conditions.

Halleck F. Rose, of Omaha, Neb. (John F. Stout and Arthur R. Wells, both of Omaha, Neb., and E. E. Wagner, of Sioux City, Iowa, on the brief), for appellant McCutchen.

Frank McNulty, of Aberdeen, S. D., for appellant Hardin.

Chambers Kellar, of Lead, S. D. (R. N. Ogden, of Deadwood, S. D., on the brief), for appellees.

Before HOOK, Circuit Judge, and VAN VALKENBURGH, District Judge.

HOOK, Circuit Judge. These appeals will be considered together. They present phases of a long and complicated litigation over what would ordinarily be a simple matter, the foreclosure of a mortgage upon a mining property in South Dakota. McCutchen appeals from an order denying him leave to intervene and from the confirmation of the judicial sale in foreclosure of the mortgage. Hardin, a party to the cause, appeals from the confirmation. Steps in the litigation appear in Phillips v. Mining Co., 27 S. D. 350, 131 N. W. 308; Hardin v. Union Trust Co., 191 Fed. 152, 111 C. C. A. 632, certiorari denied 226 U. S. 606, 33 Sup. Ct. 111, 57 L. Ed. 379; Hardin v. Graham, 38 S. D. 57, 159 N. W. 895; Hardin v. Graham, 38 S. D. 222, 160 N. W. 850.

At the risk of prolixity the material features of the long controversy will be stated. It often happens that, when that is done, and one is not lost in the contemplation of processes, regardless of their effects, the just solution plainly appears. On September 15, 1903, the Branch Mint Mining & Milling Company was the owner of a mining property in South Dakota. On that day it executed a mortgage on the property to the appellee the Union Trust Company of Philadelphia, a Pennsylvania corporation, as trustee, to secure its mortgage bonds aggregating $144,575. The mortgage covered the lands, mines, ores, mining rights, buildings, machinery, tools, implements, franchises, and income of the Mining Company, also an appurtenant narrow gauge railroad about four miles long connecting the mines with the mill. The mortgage was then a first lien on the property. The appellant Hardin was a large stockholder in the Mining Company and was then or thereafter its president.

On October 12, 1909, Hardin acquired the title to the property by a judicial sale without redemption in proceedings in a state court of South Dakota, expressly subject, however, to the lien of the above mortgage. On May 12, 1908, some holders of miners' liens on the

property sued the Mining Company, the Trust Company, and Hardin in the state court to establish their liens as prior to the rights of the defendants and for foreclosure. Service was made on the Trust Company in Philadelphia, but it did not appear and answer. Hardin filed a cross-complaint, in which he sought to enforce a lien for materials, etc., with priority over the mortgage to the Trust Company, but he caused no process to be issued and served upon it. The Trust Company did not appear or answer the cross-complaint. On May 1, 1909, the plaintiffs in that case secured judgment for their claims, with the priority sought, and for foreclosure and sale. The case as to Hardin's cross-complaint was continued. On July 27, 1909, Hardin secured a judgment for about $400,000 on his claim, with recitals that his lien was inferior to those of the plaintiffs in that suit, but superior to the mortgage of the Trust Company.

On February 4, 1910, the Trust Company appeared specially and moved the state court to strike from Hardin's judgment all references to the Trust Company and all recitals of superiority of Hardin's claim over its mortgage, for the reason that as to such matters the court was without jurisdiction. The motion of the Trust Company was sustained and Hardin appealed to the Supreme Court of the state. The decision against Hardin was affirmed. Phillips v. Mining Co., 27 S. D. 350, 131 N. W. 308. The property in controversy was sold under the miners' lien judgments of the plaintiffs in that suit. The certificate of sale after passing through several hands including Hardin's was finally redeemed by the Trust Company November 2, 1909. The delivery of a deed by the sheriff to the Trust Company on its redemption was subsequently enforced by mandamus proceedings against that officer. The money for this redemption was furnished by Walter E. Graham, one of the mortgage bondholders, and the Trust Company conveyed to him its title under the redemption deed. As will be presently related, Graham afterwards had the money he furnished embraced in a receivers' certificate in a suit in the federal court.

On October 15, 1909, the Trust Company brought the present suit in the United States Circuit (now District) Court for the District of South Dakota to foreclose its mortgage and for the appointment of a receiver. The Mining Company and Hardin were made defendants. On December 2, 1909, the court appointed two receivers of the property in controversy, one of whom was an attorney for the Trust Company, and the other an attorney for the defendants. The order provided that they should not receive compensation from the property, but should "be paid by the parties who have employed them to act as attorneys in this action." On December 4, 1909, Hardin answered asserting a miner's lien for $378,867.32, and that it was superior to the mortgage of the Trust Company. On July 27, 1910, a decree was rendered in the case. The court found there was due the Trust Company upon the mortgage bonds, principal and interest, the sum of $158,192.78, which as to defendant Hardin was a first and prior lien on the property; that Hardin had no miner's lien, and that whatever rights he had under the judgment of the state court above referred to were inferior to the rights of the Trust Company.

The decree provided for a foreclosure of the mortgage and a sale by a special master of the court; also that upon a sale by a master a certificate of sale should issue, to be followed by a deed to the purchaser or his assigns, if no redemption was made within a year. On appeal by Hardin this court affirmed the decree below. Hardin v. Union Trust Co., 191 Fed. 152, 111 C. C. A. 632. The Supreme Court denied a writ of certiorari. 226 U. S. 606, 33 Sup. Ct. 111, 57 L. Ed. 379.

On August 3, 1911, one of the receivers appointed by the court below filed a petition in the cause, stating in substance that he was an attorney for the defendants Mining Company and Hardin, that his associate, who was an attorney for the Trust Company had died, that it was the intention of the prior order that each side to the case should have a receiver, and asking that the vacancy be filled by the appointment of an attorney named. An order of appointment was made accordingly with like provision as before regarding compensation. On December 31, 1912, the two receivers filed a report, setting forth: First, that Walter E. Graham had advanced various sums of money for purposes entitling him to priority, such as assessment work on unpatented mining claims, public taxes, redemption from a foreclosure sale under miners' liens (above referred to), and receivership expenses; second, that a final decree foreclosing the mortgage of the Trust Company had been entered and the proceedings were in condition to be closed. They asked authority to issue to Graham a receivers' certificate for his advances; also for an order directing them, as receivers, to sell all the property in their possession, in one parcel and without redemption, to pay the receivers' certificate, the foreclosure decree, and the expenses of sale, and to execute a receivers' deed to the purchaser.

The court below entered an order according to the petition. It directed the receivers to issue their certificates to Graham, to advertise and sell the property in one parcel and without redemption, and to execute and deliver a deed to the purchaser. It further ordered that the proceeds of the sale be applied, first, to the expenses of the sale; second, to the amount of the receivers' certificates; and, third, to the Trust Company's decree of foreclosure, and that the balance, if any, be paid to the owner of the property. On January 7, 1913, a receivers' certificate for $20,472.92 was issued to Graham. After due advertisement the receivers sold the property without redemption to Graham for the amount of his claim and costs; there was nothing to apply on the foreclosure decree. The report of sale by the receivers was confirmed March 3, 1913; their deed to Graham was executed and recorded March 6, 1913; and on May 22, 1913, by an order of the court below, they were discharged, and the receivership declared closed. Graham's receivers' certificate was applied on his purchase and was surrendered to the receivers and canceled.

The statutes of South Dakota provide that an officer making an execution or mortgage foreclosure sale of real property shall issue to the purchaser a certificate of sale, which shall be subject to redemp-

tion by the judgment debtor or his successor in interest, or by inferior lien holders within times specified. Redemption is effected by service of notice and payment, and when made by the debtor the effect of the sale is ended. 2 Laws 1913, Code of Civil Procedure, §§ 375–383, 646–648. The claims embraced in Graham's receivers' certificate were for taxes, miners' liens, and for assessment work on the mining claims. It is not clear whether the receivers' sale for such liens would by itself independently be an execution or a mortgage foreclosure sale subject to redemption under the statutes cited; but, as will be presently observed the Supreme Court of the state held that the claims were incidental to the foreclosure of the mortgage and that the receivers' sale was therefore subject to the same rule.

On June 12, 1913, Hardin, who as above related had in 1909 acquired the title of the Mining Company, subject to the mortgage of the Trust Company by proceedings in the state court, attempted to redeem from Graham by serving a notice of redemption and tendering him the amount paid at the receivers' sale (receivers' certificate and costs), with interest, all then aggregating $21,844.20. The tender was refused. Thereupon Hardin sued Graham in the state court for an adjudication that he had effected a redemption; the Trust Company was not made a party. That court held that the federal receivers' sale to Graham was without redemption, and therefore the notice and tender were ineffective. Hardin appealed from that decision to the Supreme Court of the state.

It will be helpful at this point to restate briefly the status of the title. Hardin's ownership acquired in 1909 was then subject to the mortgage to the Trust Company, and later to the foreclosure decree on that mortgage. It was also subject to the miners' liens of Phillips and others foreclosed in the state court, with deed ultimately to Graham, from which no direct redemption was made, and later to Graham's receivers' certificate in the federal court below, the amount of which embraced the foreclosed miners' liens and other claims of a character superior to the rights of both Hardin and the Trust Company, and still later to whatever title Graham acquired by the receivers' sale, confirmation, and deed under the orders of the court below, recited to be without redemption.

On Hardin's appeal to the Supreme Court of the state the judgment of the state court of first instance that he had no right of redemption from the receivers' sale was reversed November 13, 1916. Hardin v. Graham, 38 S. D. 57, 159 N. W. 895. The questions presented by the conditions we have recited were disposed of as follows: First, the mining property, including the railroad, regarded as an entirety, was real estate, and not personalty, under the state statutes; any judicial sale of it under the Trust Company's decree of foreclosure in the federal court below, or for any claim or debt incidental to the mortgage or the foreclosure, such as the claims embraced in Graham's receivers' certificate, was also subject to redemption as prescribed by the state statutes; the federal court below was without jurisdiction to order the receivers' sale without redemption; the federal court being without jurisdiction, Hardin's action in the state court was not a

collateral attack on its orders and decrees. Second, upon the face of the deed to Graham on the foreclosure of the miners' liens in the state court Hardin was cut off, but it appearing that Graham had advanced the consideration money for the purpose of protecting the mortgage bondholders, and that at his instance the amount was embraced in the receivers' certificate issued upon the order of the federal court in the foreclosure case, he was entitled to a lien, but was estopped from asserting title under the deed. Third, the mortgage to the Trust Company was still unforeclosed and rested upon the federal court's unexecuted decree of foreclosure; that Hardin had a right to redeem from the receivers' sale to Graham without paying or tendering the amount of that decree, but after redemption by him the foreclosure decree would still stand as an incumbrance on the property. January 6, 1917, on Hardin's petition for rehearing, the Supreme Court of the state upon further consideration, and because the Trust Company was not a party to that action modified its opinion. It withdrew the paragraph relating to the status of the decree of foreclosure and expressly left the determination of that matter to the federal court. The state court of first instance was directed to enter judgment allowing Hardin to redeem from Graham upon payment of the requisite amount within a reasonable time to be fixed and upon such payment to adjudge redemption but failing payment to re-enter the judgment appealed from. Hardin v. Graham, 38 S. D. 222, 160 N. W. 850.

On April 27, 1918, after remittitur from the Supreme Court of the state a judgment was entered, first, that Hardin had redeemed from the receivers' sale by paying into court the proper amount within the time fixed and had thereby acquired all the right, title, and interest of Graham; second, that the receivers' deed to Graham was void; and, third, that the judgment so entered was without prejudice to the right and jurisdiction of the federal court to determine whether the mortgage of the Trust Company was unforeclosed, and whether its decree of foreclosure was an incumbrance upon the property notwithstanding Hardin's redemption from Graham. The amount paid by Hardin to the clerk of the state court for redemption was $33,085.98. Besides the sum paid by Graham at the receivers' sale, it included subsequent taxes and the cost of subsequent assessment work on mining claims paid by him. No part of it was for the mortgage debt due the Trust Company.

On April 8, 1918, after the modified opinion of the Supreme Court of the state, Graham filed in the foreclosure suit below a petition for an order on Hardin to show cause why the orders for the receivers' sale and for the discharge of the receivers should not be vacated, and the same or other receivers appointed to hold and preserve the property pending the litigation, and why Graham should not be restored to his position prior to the receivers' sale. A few days later the Trust Company filed a similar petition for execution on its foreclosure decree. Graham's petition, which contained an exhaustive review of the litigation in both state and federal courts, recited that the tender of the amount fixed by the state court for Hardin's redemption from the re-

ceivers' sale was refused at that time. Hardin appeared and answered, the two petitions were consolidated for hearing, and a hearing was had.

The court below rendered an opinion July 17, 1918, and a decree August 13, 1918. It held in substance that under the state redemption statutes it had jurisdiction to order the receivers' sale without redemption to pay the debts prior to the mortgage and foreclosure decree, that a sale without redemption was expressly sought by the receivers, one of whom was counsel for Hardin, that although the language of their petition and of the court's order thereon was broad enough to embrace the foreclosure decree as well as the receivers' debts prior thereto no such sale was in fact made, and consequently the foreclosure decree stood unimpaired and unexecuted. The court below said that, since Graham had not in the first instance invoked its power to protect his title against Hardin, but had subjected himself to the jurisdiction of the state courts in Hardin's action to redeem, it would follow the lines of decisions by those courts. It was accordingly adjudged that the decree of foreclosure was in full force and effect, and that the Trust Company should have special execution thereon. A receiver was appointed. A special execution to the marshal was then issued; the marshal reported a sale October 9, 1918, to the Trust Company for $200,-000, leaving a deficiency of $50,000, round figures.

On October 12, 1918, and January 14, 1919, Hardin filed objections to the confirmation of the sale. December 12, 1918, appellant McCutchen moved for leave to intervene and also objected to the confirmation. McCutchen had furnished Hardin the money to redeem from Graham and as security he had taken Hardin's deed of the property August 30, 1917. On the hearing of these motions it was shown that McCutchen was informed of the proceedings as they occurred between the time he acquired his interest and the time he sought to intervene. On December 18, 1918, Graham took the money Hardin had deposited with the clerk of the state court for redemption from the receivers' sale. On January 14, 1919, the court below denied McCutchen's motion to intervene, and on the following day it overruled the objections and confirmed the sale. These appeals followed.

We accept the decision of the state courts, without considering whether the order of the court below for a receivers' sale without redemption was beyond its jurisdiction, and therefore subject to collateral attack in those courts, or whether, having jurisdiction of the parties and of the subject-matter of the litigation, the court below merely committed error in the remedy exclusively correctable there or by appeal to this court. It is apparent that the state Supreme Court perceived the injustice that would result from holding the sale to Graham subject to redemption with the result claimed by Hardin, and it sought to prevent it. The Trust Company was not a party to that action, and the status of its foreclosure decree was left to the court below in which it was rendered. The court below thereupon held in effect that the receivers' sale was for the receivers' debts alone, and that Hardin's redemption as owner merely satisfied them leaving the foreclosure decree untouched.

We think that if, after sale, confirmation, and deed to Graham his title so acquired is subjected to redemption contrary to the express provision of the order of the court under which the proceedings moved, some adequate measure of equitable relief from the consequences sought to be enforced by Hardin is required by the plainest principles of equity. It is not reasonably conceivable that, in trying to protect the mortgage bondholders with their foreclosure decree of $158,392.78, Graham would have bought the property for the comparatively small amount of his claims under conditions that would result, not only in the loss of his title so acquired, but also in the satisfaction of the foreclosure decree without payment. The proceedings resulting in the sale without redemption were not mere process on the decree, as counsel term them. They were more than that. In making the order for the sale the court below judicially considered and passed upon conditions which arose after the foreclosure decree. It was doubtless influenced by its conception of the character of the property and of the claims embraced in the receivers' certificate, and by the affirmative request for such a sale and motion to confirm it by counsel for Hardin acting as one of the receivers. The action by Hardin in the state court was an attack, not upon the sale as a whole, as it more properly should have been, but upon a single feature of it which operated against him. That important feature of the sale having been held invalid, it would seem manifestly right that the sale itself be vacated and the parties restored to their prior status. If Hardin's attack had been in the court which ordered the sale, and if it had been there held that the non-redemption provision was erroneous or invalid, the entire sale would undoubtedly have been set aside. He would not have been allowed to profit by the situation in which the other parties would have been placed by the ruling. The state courts, not having jurisdiction of the entire matter, could not go so far; but, when it arose again in the court below, it was competent for that court to grant the proper relief. Otherwise a trap would be made of the rules of law. The fact that the terms of court at which the foreclosure decree and the order for the receivers' sale were entered had expired is not important. The decision of the state courts, giving to the order an effect not contemplated when it was made, and involving also the foreclosure decree according to Hardin's contention, occurred subsequently. It was proper to bring the subsequent situation so created to the attention of the court below by supplemental bill. As to the province of such a bill after decree, see Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136, 37 L. Ed. 1123. The petitions of Graham and the Trust Company for orders on Hardin to show cause may be taken as supplemental bills. Issues were joined and tried, and a decision rendered, with all the judicial accompaniments of a proceeding of that kind.

Something remains to be said on behalf of Hardin and McCutchen. It is clear that in redeeming from the receivers' sale Hardin who owned the property, but was not personally liable for the judgment debt expected to remove all incumbrances. He did not anticipate that his title would remain subject to the foreclosure decree as

271 F.—38

the court below has found. Although there are indications that much of the litigation over the property has been caused by his efforts to cut off without paying the large mortgage, apparently valid in all respects, we do not think that, when a court of equity is called upon to exercise its widest powers by restoring the status quo, it should penalize him. By his petition for an order to show cause, which is treated as a supplemental bill after decree, Graham asked that the receivers' sale be vacated and for a restoration to his prior position. If that had been done, Hardin also would have been similarly restored, with refund to him of the redemption money.

At this point arises the claim of McCutchen, who furnished Hardin the money and took his deed as security. After the decision of the court below that the foreclosure decree was not involved in the receivers' sale and remained as an incumbrance after Hardin's redemption, Graham took down the redemption money on deposit with the clerk of the state court. It should be repaid upon the vacation of the receivers' sale and the restoration of Graham's liens. McCutchen was not entitled to intervene as a matter of right. As an outsider and mere volunteer, he bought into the pending litigation. According to familiar doctrine, his application rested in the discretion of the court below, and it denied it. But if the court had held, as we do, that the redemption money should be returned, it would doubtless have exercised its discretion by allowing McCutchen to intervene, not for the purpose of contesting the sale under the foreclosure decree, but to assert his claim to the money. Upon that matter Hardin should have an opportunity to be heard.

The confirmation of the sale to the Trust Company under its foreclosure decree should be conditioned upon payment into the court below, within a time to be fixed by it, of the amount of redemption money, without interest, for the benefit of Hardin and McCutchen as their interests may be shown. On the other hand, it ought not to be required to accept unwillingly a confirmation of the sale subject to Graham's restored liens. Therefore, if the money is paid into court as directed, and the Trust Company signifies of record, within a time to be fixed by the court below, that it accepts the title acquired by the sale to it subject to Graham's liens, the confirmation of the sale shall stand affirmed; otherwise, it shall be vacated.

The cause is remanded to the court below for further proceedings in conformity with this opinion.